# CHARLESTON.

1873.
January
Term.

KYGER VS. DEPUE.

HUGH KYGER PLAINTIFF AND APPELLEE *against*
O. R. NEAL AND MARSHALL DEPUE, DEFENDANTS
AND APPELLANTS.

Decided February 24th 1873,

## SYLLABUS.

1. A *bona fide* purchaser is one who actually purchases in good faith.

2. H. K., and K., convey to N., certain lands by a deed absolute on its. face, but at the date of the deed, and as a part of the transaction a written contract under seal is executed, and delivered by H. K., and N., whereby, it is agreed that if H. K., pays certain debts and liabilities of H. K., due to N., and other debts of H. K., which N., became liable for, as they become payable that N., should re-convey the land to H. K.,—H. K., afterwards on faith of the arrangement pays and causes to be paid a large part of the debts and liabilities by a sale of part of the land to D., and otherwise with the consent of N., who conveys the land sold, to the purchaser of H. K., N., afterwards, and without the knowledge or consent of H. K., sells 100 acres more of the land to D., for $15 per acre and gives his title bond therefor. D., informs H. K., of the purchase with which H. K., is dissatisfied, and informs D., that he has a claim on the land, and its character, and notifies D., not to purchase any part of the residue of the land. In a few days afterwards and on the 27th day of January, 1870, N., learning that H.,

K., was dissatisfied about the sale, writes H. K. a letter in which he says: In order that you may provide against further sales to D., (for he wants $2,500 worth more,) I will say that I will defer a sale until the 1st of May, at which time I shall need every dollar I can command, and if you do not by that time or before make a sale, I shall be compelled to sell at any price I am offered. Crediting the $1,500, D.'s sale reduced to cash, leaves you still indebted to me $1,800. Albert Stringer paid me $100 for you. My advice is that you sell, not wait for the 1st May, as I shall make a bargain with Depue or any other person wanting land, to be closed at that time, provided you are unable to make sale. On the 28th of February afterwards N., without the knowledge or consent of H. K., sells another 100 acres of the land adjoining the first 100 acres to D., at $15 per acre, much less than its value, and embracing nearly the whole of the improved land—In the case of a bill filed by H. K. against N. and D. praying among other things that the last sale by N. to D. be set aside.: HELD,

1. That the sale of the last 100 acres by N. to D. under the circumstances was bad faith, and fraudulent as to H. K., and that as D. had notice of the claim of H. K. to the land, and had been notified not to purchase it prior to his making the purchase, D. was a purchaser with notice of the claim of H. K., and the sale of the land should be set aside.

2. That, under the circumstances, H. K. was entitled to redeem the whole of the unsold land, including the 100 acres last sold.

3. That the creditors of H. K., other than N., mentioned in the contract between H. K. and N. should be made parties to the suit.

4. That so much of the land, including the 100 acres last sold by N., and excluding the other land sold to D., should be sold as may be necessary to pay said debts and liabilities, and such judgments against H. K. as are liens upon the land, unless the said H. K. pays the debts and liabilities. That if H. K. pays the debts and liabilities N. shall convey the lands to H. K. That if any part of the land is sold to pay the debts and liabilities, the residue, if any, shall be conveyed by N. to H. K., or by a commissioner appointed for the purpose.

At the July Term 1865, of the Circuit Court of Roane county, judgments were rendered against Hugh Kyger in two actions of trespass alleged to have been done during the late civil war and which were therewith connected. While these actions were pending, on the 22nd day

of June 1865, Kyger conveyed to D. R. Neal by a deed, absolute on its face, certain lands lying in said county. On the 4th of December 1867, Kyger and A. L. Kannard, who is not a party to this suit, conveyed to Neal by deed of the same character certain other lands lying in the counties of Roane, Jackson and Wirt. On the same day as is alleged the following agreement in writing and under seal was made.

" Hugh Kyger did on the 23d June, 1865, and A. L. Kannard and said Kyger did on the 4th of December, 1867, convey to D. R. Neal certain lands in the counties of Roane, Jackson, and Wirt, West Virginia; and whereas the said Neal holds the note of said Kyger, dated 4th December, 1867, for four hundred and fifty-one dollars seventy-six cents, and the said Neal has assumed and is liable for sundry amounts for said Kyger, as follows, viz.: One note with A. L. Kannard to B. Smith for $550; one other to Lee & Edmiston for five hundred dollars; four others, each three hundred and forty dollars eighty-seven cents, dated 4th December, 1867, to A. L. Kannard ; also the endorser of said Kyger on a note to Second National Bank for one thousand and ninety dollars; also the note of said Neal to Thomas A. Roberts for $500, due 20th December, 1867, $500, due 20th December, 1867, and one other for $1,000, due 20th June, 1868, with interest; also the said Neal has agreed to save harmless A. L. Kannard for his liabilities on a judgment in favor of R. S. Brown for $200, interest and costs ; also $200 to Benjamin Wilson, now in the hands of Jacob Cork: Now, if the said Kyger shall well and truly pay off and discharge said debts, or any other liabilities of said Neal for him, as well as the notes of said Kyger to said Neal, as they become due and payable, so that the said Neal shall not be compelled to pay any part thereof from his private means, then the said Neal hereby agrees to reconvey to said Kyger any of the lands conveyed by said Kyger and A. L. Kannard, the said Neal claiming

and retaining the right to sell at his pleasure any or all of the said lands ; and in the event of a failure on the part of said Kyger to do and perform the undertaking aforesaid, it is left entirely to the option of the said Neal to do as he may elect in the premises.

Witness the following signatures and seals :

H. KYGER.    [SEAL.]
D. R. NEAL.    [SEAL.]"

On the 1st of March 1870, Neal executed to Kyger a power of attorney authorizing him to sell and convey with special warranty any of the lands conveyed in the said deed of October 4th 1867, executed by Kyger and Kannard and wife to Neal.

In 1868 or 1869 with the consent of Kyger, as is admitted, the defendant Depue purchased 698 acres of the land conveyed by Kyger to Neal by deed dated June 22nd 1865, for $1.950, and obtained from Kyger and Neal a conveyance for the same. Afterwards Depue purchased of Neal 100 acres of the same land at $15 per acre, and still later 100 acres more at the same price.

With these last two sales the Plaintiff was greatly dissatisfied.

On the 18th of March 1870, the Plaintiff filed his original bill, and on the 16th of August 1870 he filed his amended bill. He alleges that the defendant Neal was his brother-in-law and a man of considerable wealth ; that he applied to him, after the judgment already referred to had been rendered in the actions of trespass, to render him some pecunary assistance and to become his surety in a bond which it was necessary for him to give to obtain a supersedeas to said judgments; that Neal consented to aid him in the mode proposed, provided he would convey to him a certain valuable tract of land containing 1500 acres ; that he did so; that the said conveyance was not a sale and grant in fee simple to Neal, but a conveyance in trust that when he should repay Neal the advances which he might make that then Neal would re-

convey the lands to him; that this deed was not made to hinder, delay or to defraud creditors, nor was it fraudulent in any purpose or view; that the supersedeas was obtained; but that sometime thereafter the judgment was compromised by Plaintiff agreeing to pay in satisfaction thereof $3,000, of which one note of $500 was paid by the Plaintiff, and the balance was paid by Neal; that the whole of the purchase money of the first two sales, amounting to $3,425, was paid to Neal, and that other sums of money were also paid to Neal for the Plaintiff, and that there was no necessity to make the last sale of 100 acres; that it was always understood that, as soon as the Plaintiff could be released from his embarrassments, the tract of 1500 acres should be reconveyed to him; that the 200 acres sold by Neal to Depue were sold without the approval of the Plaintiff.

Neal answerd the bill denying that the conveyance of June 22nd 1865, was a conveyance to trust as claimed by the Plaintiff. Depue answered both the original and amended bills denying all fraud in the premises and that he had notice previous to his purchases that Kyger set up any claim to the land and that he made any misrepresentation to Neal. A number of depositions were taken and several letters exchanged by the parties were make exhibits.

The Court decided that an account should be taken which would show what amount was due Neal for moneys advanced or liabilities incurred for Kyger, and decreed that the injunction should be continued and made perpetual, and that upon the coming in and confirmation of the account, if it should appear that anything was due from Kyger to Neal, that Kyger should within a reasonable time, to be fixed by the Court, pay the same, and that Neal should reconvey to Kyger by a deed of special warranty the said fifteen hundred acres of land, excepting out of such conveyance the tract of six hundred and twenty-eight acres conveyed by Kyger and Neal to Depue, and that upon the repayment to Neal of his advan-

ces to Kyger and the indemnification of Neal for all liabilities so incurred, Neal should reconvey to Kyger the lands conveyed to him by Kyger and Kannard, except such lands as Neal had sold under and by virtue of a contract between Kyger and Neal dated June 23rd 1865

1873.
January
Term.

Kyger
v.
Depue.

*B. H. Smith* and *Okey Johnson,* for Plaintiff.

*Fisher,* for Appellee.

HAYMOND President.

I have examined the record in this case, and the authorities cited by the counsel for Plaintiff and Defendants with great care, and have found much difficulty in arriving at a satisfactory conclusion. From the bills, answers, exhibits and depositions, I am satisfied that the deed from Plaintiff to defendant Neal, dated the 22nd day of June, 1865, mentioned in the original bill as exhibit No. 1, was not intended by the parties thereto, at the time of its execution and delivery, to be, and to operate as an absolute sale and conveyance of the 1,500 acres of land therein mentioned. But that the deed was executed and delivered to Neal by Plaintiff, in trust and confidence that Neal would reconvey the land to Plaintiff at a future period, according to the understanding, contract and agreement, oral and written, then made between them, and that Neal after the execution of the deed by his letters written to Plaintiff and filed as exhibits with the amended bill, recognized an equitable right existing in the Plaintiff in the land, especially so, in his letter dated October 29th, 1867, and in his answer to the amended bill and otherwise. It is true, that Neal in his answer first filed, which is made upon oath, denies that the conveyance was made for the purpose alledged in the bill; but he avers that it was a *bona fide* conveyance of the land to him. He also admits that he executed a writing to Plaintiff in relation to the conveyance which was afterwards cancelled by the consent of Plaintiff, and a new arrangement made. A *bona fide* purchaser is one who actually purchases in

good faith.  Bouvier's Law Dictionary, 211, 2nd Kent's Comm., 512.  In his answer to Plaintiff's amended bill, Neal admits that when he first bought the 1,500 acres, he agreed to reconvey the same to Plaintiff, when he (Plaintiff) had paid to him all the liabilities he had assumed for him (Plaintiff.)  It seems to be admitted that the action brought by Roberts grew out of the late war, and Neal, in the concluding clause of his answer to the amended bill, says that he and Plaintiff both felt and knew it to be an unjust demand.  Kannard and Neal (who were responsible men) signed the "supersedeas bond" in the appeal taken by Plaintiff from the judgment of the Circuit Court in favor of Roberts, against Plaintiff, to the Supreme Court of Appeals, which made the Roberts judgment, if correct and lawful, secure and safe.  Neal now seems to claim the whole of the lands conveyed to him at the date of both deeds, notwithstanding they greatly exceed in value the money paid or liabilities incurred.  And it is now for the Court to arrive at the justice of the case in accordance with the rules of equity and good conscience governing courts of equity, as nearly as may be.

With Plaintiff's amended bill there is filed, as exhibit No. 3, a deed from A. L. Kannard and wife and Plaintiff to Neal, dated the 4th day of December, 1867, conveying to Neal certain lands which had been previously conveyed by Plaintiff to Kannard, to indemnify Kannard against liabilities for Plaintiff as alledged in the bill, and not denied in the answers.  This deed toward the conclusion thereof, and after conveying other lands, which are described, contains this clause, to-wit: "And the said Hugh Kyger doth hereby grant unto the said Neal, in addition to the lands partly described in the foregoing conveyance, all the lands held or owned by said Kyger in the counties of Roane, Jackson and Wirt, in partnership with others or in his own right, and not expressly set forth in this deed, except the 1,000 acres sold to C. C. Smith.  As to Kannard the deed is one of

special warranty, but as to Plaintiff it is a deed of general warranty. This deed was made after the Roberts judgment, (from which an appeal and supersedeas was taken to the Supreme Court of Appeals) was confirmed, and it passed and vested in Neal all interest, right or title, legal or equitable, which Plaintiff had to the 1,500 acres of land at the time of its delivery, except so far as it may have been qualified by another and new contract made between Plaintiff and Neal. The deed from Plaintiff to Kannard is not filed, but the object and purport of it is alledged in the bill, and are not denied in the answers. Neal filed with his answer to the original bill, as exhibit A, a written contract signed and sealed by Plaintiff and Neal. The contract is not dated, but it refers to the deed from Kannard and Kyger to Neal, of the 4th of December, 1867, for the lands in Roane, Jackson and Wirt counties, and it commences thus: "Hugh Kyger did on the 23rd June, 1865, and A. L. Kannard and said Kyger did on the 4th day of December, 1867, convey to D. R. Neal certain lands in the counties of Roane, Jackson and Wirt, West Virginia." Neal says and admits that the date 23rd is a mistake; that it was intended to be the 22nd, and referred to the deed for the 1,500 acres of land, which is manifestly true. Plaintiff, in his amended bill, alleges that this contract which he files as exhibit No. 4, was made on the day the deed was made by him and Kannard to Neal, and that it contains the contract which was the consideration for which the deed was made; and this allegation is not denied by defendants Neal or Depue, and it is substantially admitted by Neal in his answers. The 1,500 acres of land conveyed by Plaintiff to Neal on the 22nd day of June, 1865, is clearly embraced in this contract. It is not claimed or pretended by any of the parties to this suit, that Plaintiff made more than one deed to Neal for land in June, 1865, and that one is dated and was made on the 22nd day of June. The contract under consideration, which I will hereafter designate as exhibit A, I

1873.
January
Term.

Kyger
v.
Depue.

think is binding on Plaintiff and Neal. Neal admits it is valid and binding on him, and Plaintiff admits it. He sets it up in his amended bill, but misconstrues it as to its legal effect. It is not claimed or even insinuated by any of the parties to this case, in their pleadings, that the deed of the 4th ot December, 1867, by Kannard and wife and Plaintiff to Neal, and exhibit A were made to defraud Roberts or any other person. Exhibit A shows that the deed of the 4th of December was made to Neal to indemnify and secure him in certain debts and liabilities of Plaintiff, assumed by Neal, amounting to some five or six thousand dollars, among which is a large part of the Roberts debt. Exhibit A concludes thus: "Now, if the said Kyger shall well and truly pay off and discharge said debts, or any other liabilities of said Neal for him, as well as the notes of said Kyger to said Neal, as they become due and payable, so that the said Neal shall not be compelled to pay any part thereof from his private means, then the said Neal hereby agrees to reconvey to said Kyger any of the lands conveyed by said Kyger and A. L. Kannard, the said Neal claiming and retaining the right to sell at his pleasure any or all of the said lands; and in the event of failure on the part of said Kyger to do and perform the undertaking aforesaid, it is left entirely to the option of the said Neal to do as he may elect in the premises. Witness the following signatures and seals." It appears that afterwards, and prior to April 1869, Plaintiff sold to defendant Depue 698 acres of the 1,500 acre tract, and Neal received most or all the purchase money and, with the consent and knowledge of Plaintiff, made to Depue a deed for the same. I think this sale is good and ought not to be disturbed. Plaintiff, after the 4th of December, 1867, paid a large sum on debts named in exhibit A, and also paid Neal several hundred dollars. On the 3rd day of January, 1870, Neal, without the knowledge of Plaintiff, sold to Depue

a boundary of the 1,500 acre tract, adjoining the 698 acres previously sold, at $15.00 per acre, supposed to contain 100 acres, but if the land should exceed or fall short of 100 acres, the excess or deficiency should be accounted for at the rate of $2.50 per acre. Very soon after this sale was made Depue informed Plaintiff of the fact, and the evidence clearly shows that Plaintiff then notified Depue that he had a claim upon the land, and its character, and in fact the whole of the 1,500 acre tract, except the 698 acres previously sold, and remonstrated with Depue for having purchased the 100 acres, and begged him to allow him a chance to redeem the land ; but Depue evidently thinking he had made a profitible and sharp purchase declined Plaintift's offer. Plaintiff notified Depue not to purchase any more of the land, and I think the evidence proves that in the conversation with Plaintiff, Depue admitted that before he made the purchase he had notice of Plaintiff's claim to the land. After this sale by Neal to Depue, and on the 27th day of January, 1870, Neal wrote a letter to Plaintiff, which is filed with Plaintiff's amended bill as Letter No. 3, from which it appears that Neal had about that date received a letter from Plaintiff. The contents of Plaintiff's letter to Neal does not appear, but I infer, from the tenor of Neal's letter, that Plaintiff's letter was a complaint by Plaintiff on account of the sale lately before made by Neal to Depue. In the letter of Neal to Plaintiff this language is found, to-wit : "In order that you may provide against further sales to Depue (for he wants $2,500 worth more) I will say that I will defer a sale until the first of May, at which time I shall need every dollar I can command, and if you do not, by that time or before, make a sale, I shall be compelled to sell at any price I am offered. Crediting the $1,500 Depue sale, reduced to cash, leaves you still indebted to me $1,800. Albert Stringer paid me $100 for you."

38

In a memorandum at the close of the letter Neal uses this language, to-wit: "My advice is, that you sell, not waiting for 1st May, as I shall make a bargain with Depue or any other person wanting land, to be closed at that time provided you are unable to make sale. I asked Depue to see you about the land he still wanted and, if possible, to agree with you as to quantity and price." Neal in this letter recognizes some right or interest of Plaintiff in the residue of the land, and he expressly extends the time for Plaintiff to make sale of land and pay the debts until the first of May thereafter. But notwithstanding this positive, unequivocal extension of time to Plaintiff until the 1st of May, Neal afterwards on the 28th day of February 1870, about one month after the extension was given, without the knowledge or consent of Plaintiff, made an absolute sale by title bond, &c., of another boundary supposed to contain 100 acres to Depue, at the price of $15 per acre, adjoining the other 100 acres. This was bad faith in both Neal and Depue towards Plaintiff. It was in fact an actual fraud upon Plaintiff, and is contrary to equity and good conscience. The sale of the first 100 acres which was made on the 3d of January 1870, I think under the circumstances ought not to be interfered with, although I have had some difficulty in arriving at that conclusion. The sale by Neal of the 28th day of February 1870 to Depue ought to, and must be set aside. It appears from the evidence that the two last purchases of Depue from Neal embrace nearly the whole of the cleared land upon Plaintiff's home farm, as well as the most valuable part of it, and I am satisfied that $15 per acre is far below its value. Considering the whole case, and all the circumstances connected with it, I think it should be held and declared that notwithstanding the deeds of 22d of June 1865, and the 4th day of December 1867, the Plaintiff, by and under the express terms of exhibit A., had and was possessed of the right in equi-

ty, to redeem said 1500 acres of land, as well as all the other lands conveyed by the deed of the 4th of December 1867 from the said Neal, except the 698 acres before named, and the 100 acres first sold by Neal to Depue, and that said equity of redemption still exists. In so declaring I do not wish to be understood as departing from the principles decided in the cases of Starke's ex'rs vs. Littlepage, 4 Rand., 368; James vs. Bird's adm'r, 8 Leigh, 510; Terrell vs. Imboden, et al., 10 Leigh, 321; Owen vs. Sharp and wife, et al., 12 Leigh, 427, for I approve the principles adjudicated in these cases. I do not think this case, under the view I have presented, comes within the principles determined in these cases. The Court cannot avoid taking notice of and considering the fact, that peace was not officially declared until sometime after June 1865, and that during the war, and for sometime after, great excitement, passion and feelings of enmity existed among the people, as well as peril to life and property. Under such circumstances and influences many good and honest men made singular voluntary dispositions of their property, as measures of safety and protection simply, without intending to injure or defraud creditors or others; and such dispositions of property, considering the times and circumstances under which they were made, should be regarded with more liberality, when we are looking after fraud and fraudulent intent, than if made in time o profound peace.

The balance due upon the debts named in exhibit A, or the balance due Neal upon payments he may have made thereon, or because of the existence of any debt from Plaintiff to him on the 4th of December 1867, should be ascertained, after charging Neal with the amount of purchase money received on the sale of the 698 acres of land, and also charging him with the price of the first 100 acres sold Depue, and all other moneys paid to or received by him on his debt or claim, and the liabilities

against Plaintiff or Neal growing out of exhibit A. The valid and now unsettled judgment liens, if any, existing against said 1500 acres of land, prior to the 22d of June 1865, and against the other lands prior to the 23d day of June 1865, and the unsettled valid judgment liens against Plaintiff's interest in said lands should be ascertained, estimating the Roberts judgment at $3,000 in the hands of Neal, with proper interest, crediting such part as was paid by Plaintiff. After payment of the balance due on the debts, claims and liabilities, arising or growing out of exhibit A, and the balance due on the unsettled judgment liens, the legal title to all the lands except the 698 acres, and the 100 acres first sold by Neal to Depue, should be vested in and passed to Plaintiff, and if they are not paid then, so much of the land, as may be necessary for the purpose should be decreed to be sold.

It is also material to a final and proper decision of this cause that A. L. Kannard and the other persons named in exhibit A, should be made parties defendant in the cause.

For these reasons the decree of the Circuit Court of the county of Roane, rendered in this cause on the 10th day of November 1871, must be reversed, and the cause remanded to said Circuit Court for further proceedings therein to be had, with leave to the Plaintiff to file an amended bill, making new and additional parties. And the defendant Neal must recover against Plaintiff his costs in this Court expended.

PAULL, MOORE and HOFFMAN, Judges, concur in the foregoing opinion.