637 S.E.2d 623

**Harold B. WOLFE and Luther Ellison, Plaintiffs Below, Appellants,**

v.

**Vips ALPIZAR, Defendant Below, Appellee.**

No. 33093.

Supreme Court of Appeals of West Virginia.

Submitted Oct. 4, 2006.

Decided Oct. 27, 2006.

William J. Akers, Akers Law Office, Princeton, for the Appellants.

Barry L. Bruce, Thomas W. White, Barry L. Bruce & Associates, Lewisburg, for the Appellee.

Harold B. Wolfe, III, Princeton, for the Appellants.

## PER CURIAM:

The appellants, Harold B. Wolfe and Luther Ellison (hereinafter "Mr. Wolfe" and "Mr. Ellison", individually, or "appellants" collectively), appeal from an order entered September 16, 2005, by the Circuit Court of Monroe County. By that order, the circuit court denied the appellants' motion for reconsideration of its order granting summary judgment to the appellee, Vips Alpizar (hereinafter "Ms. Alpizar"), and further denied the motion to amend the complaint.[1] On appeal, Mr. Wolfe and Mr. Ellison argue that the circuit court committed error in granting Ms. Alpizar's motion for summary judgment. Based upon the parties' arguments, the record designated for our consideration, and the pertinent authorities, we affirm the decision by the circuit court.

---

1. The appellants moved to amend their complaint to add the previous landowner, Mrs. Brown, as a defendant. The circuit court's refusal to allow the motion to amend is not an issue before us on appeal.

## I.

### FACTUAL AND PROCEDURAL HISTORY

In this case, the parties owned adjacent properties, which were used as farms or as vacation homes. Mr. Wolfe and Mr. Ellison had a deeded easement through Ms. Alpizar's property to reach their own land. Mrs. Brown was the previous owner of Ms. Alpizar's property, which Ms. Alpizar purchased on November 28, 2001. The deed to the land referenced a thirty-foot deeded right-of-way easement in favor of Mr. Wolfe and Mr. Ellison. At the time of Ms. Alpizar's purchase, there was a bridge on her property. The bridge is north of the easement, and, according to the record, Ms. Alpizar specifically questioned Mrs. Brown about the bridge prior to purchasing the land. Mrs. Brown confirmed that the bridge was north of the easement and that it would be solely Ms. Alpizar's bridge when she purchased the land. Ms. Alpizar bought the land as a vacation spot and was only on the property for a limited amount of time each year. As time passed, the bridge fell into disrepair. Ms. Alpizar had it inspected, and, due to the nature of the deficiencies, she had it removed.

Mr. Wolfe and Mr. Ellison filed a lawsuit alleging that Ms. Alpizar had no right to remove the bridge and requesting that she be forced to rebuild the bridge. The appellants claimed that the bridge was the only safe way for them to access their property; thus, it should not have been removed. Moreover, the appellants claimed that they were each a one-third owner in the bridge because they had entered into an agreement with Mrs. Brown, the previous owner of the property who sold the land to Ms. Alpizar, for construction and payment for the bridge.[2] An affidavit submitted by Mrs. Brown denied having entered into any such agreement and further denied having received any money from the appellants for construction of the bridge.

This case was instituted in October 2004, seeking to enjoin Ms. Alpizar from blocking the appellants' access to their property[3] and seeking an order directing her to rebuild the bridge. Appellants filed a motion for summary judgment, which they later withdrew. Thereafter, Ms. Alpizar filed a motion for summary judgment, which was granted by order entered August 26, 2005. This appeal follows the circuit court's denial of the appellants' motion for reconsideration.

## II.

### STANDARD OF REVIEW

The case before this Court on appeal follows the circuit court's denial of a motion for reconsideration regarding a grant of a motion for summary judgment. In regard to the motion for summary judgment, we have stated that "[a] circuit court's entry of summary judgment is reviewed *de novo*." Syl. pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994). Thus, in undertaking our de novo review, we apply the same stan-

---

**2.** The appellants alleged that the terms of the bridge construction agreement were as follows: Harold Wolfe was to pay one thousand three hundred dollars for his portion, and Luther Ellison was to pay one thousand dollars and provide three hundred dollars worth of services. No document was ever recorded evidencing this agreement, or "easement," as the appellants refer to it. However, Mr. Wolfe produced three hand-written receipts that he alleged as proof of the agreement for the construction of the bridge. One receipt stated "6–18–94 Received 300.00 from Harold Wolfe on easement Bal 500.00 Georgia Brown." A second receipt consisted of the following: "8–14–94 Received two hundred dollars from Harold Wolfe on easement. Balance due 300.00 Georgia M. Brown." The third receipt stated "7–25–93 Received of Harold Wolfe five hundred dollars as part payment on

bridge across Turkey Creek on my farm." The signature is illegible, but it is agreed that the signature evidenced that of Mr. Joe Brown. Joe Brown is the husband of the former property owner, Georgia Brown; however, Joe Brown was not a title owner to the property. Georgia Brown filed an affidavit in this case wherein she denied any agreement ever existed regarding the construction of the bridge. Moreover, Mrs. Brown denied receiving any payments for construction of the bridge and denied executing the alleged receipts.

**3.** The record reveals that the appellants always had access to their property through the thirty-foot deeded easement, which was at a location south of the bridge in question.

dard for granting summary judgment that is applied by the circuit court:

> " 'A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law.' Syllabus Point 3, *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963)." Syllabus Point 1, *Andrick v. Town of Buckhannon*, 187 W.Va. 706, 421 S.E.2d 247 (1992).

Syl. pt. 2, *Painter*, 192 W.Va. 189, 451 S.E.2d 755. Moreover,

> [s]ummary judgment is appropriate where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove.

Syl. pt. 4, *Painter*, *id.* We are also cognizant that "[t]he circuit court's function at the summary judgment stage is not to weigh the evidence and determine the truth of the matter, but is to determine whether there is a genuine issue for trial." Syl. pt. 3, *Painter*, *id.* Mindful of this applicable standard, we now consider the substantive issues herein raised.

## III.

## DISCUSSION

On appeal to this Court, Mr. Wolfe and Mr. Ellison assign error to the circuit court's decision to grant Ms. Alpizar's motion for summary judgment. The appellants argue that there was an express easement created at the site of the bridge and, further, that a prescriptive easement existed at the same site. Ms. Alpizar answers that the circuit court's grant of summary judgment was appropriate because there was no writing conveying any interest in land; thus, there was no express easement. Furthermore, Ms. Alpizar avers that the appellants failed to meet the requirements to establish the existence of a prescriptive easement.

▆ Our analysis of this case forges a different path than the arguments set forth by the parties. While we agree with the end result reached by the circuit court, we affirm its decision based on a different legal theory than that espoused in its order.[4] The parties focused their attention on whether an express easement and/or a prescriptive easement[5] existed at the location of the bridge

---

4. The circuit court's ruling decided that the alleged express easement failed for lack of compliance with the statute of frauds, and further found that the prerequisites to establish a prescriptive easement were not met. Our analysis of the case does not require us to reach those issues because we determine that Ms. Alpizar was a bona fide purchaser whose purchase of the land terminated any claims by Mr. Ellison or Mr. Wolfe. *See Murphy v. Smallridge*, 196 W.Va. 35, 36–37, 468 S.E.2d 167, 168–69 (1996) ("An appellate court is not limited to the legal grounds relied upon by the circuit court, but it may affirm or reverse a decision on any independently sufficient ground that has adequate support."); *McJunkin Corp. v. West Virginia Human Rights Comm'n*, 179 W.Va. 417, 423, 369 S.E.2d 720, 726 (1988) ("Although the circuit court's ruling in this matter was based on the insufficiency of the evidence on the record, this Court may uphold the circuit court's ruling on the ground we have cited above."); *Longwell v. Hodge*, 171 W.Va. 45, 47, 297 S.E.2d 820, 822 (1982) ("We agree with the Circuit Court, and affirm its decision, although for different reasons than those expressed by the lower court.")

5. As will be explained, our review reveals that Ms. Alpizar is a bona fide purchaser; thus, any

analysis of the existence of an express or prescriptive easement as between the appellants and the previous owner is unwarranted. That is not to say, however, that a prescriptive easement cannot exist as against a bona fide purchaser. We will assume for the sake of argument that a prescriptive easement existed. With respect to imposing a prescriptive easement against a bona fide purchaser, we have stated the following:

> "It is a well-established principle governing the purchase of servient tenements that an easement therein is extinguished unless the purchaser has either actual notice of the existence of the easement, or constructive notice from the recordation of the express grant or reservation creating it, or from the fact that its use and enjoyment is open and visible .... The law imputes to a purchaser such knowledge as he would have acquired by the exercise of ordinary diligence ... The grantee is bound where a reasonably careful inspection of the premises would disclose the existence of the easement, or where the grantee has knowledge of facts sufficient to put a prudent buyer on inquiry. It is not necessary that the easement be in constant and uninterrupted use." *Fanti v. Welsh*, 152 W.Va. 233, 239–240, 161 S.E.2d 501, 505 (1968) (Citations omitted).

crossing. However, we find neither analysis relevant as the facts of this case necessarily require us to focus on the relationship between the parties that are currently before this Court: Mr. Wolfe, Mr. Ellison, and Ms. Alpizar. Mrs. Brown, the previous owner of Ms. Alpizar's land, is not a party before this Court. Thus, we must determine in what context Ms. Alpizar's purchase of the land must be placed.

■ We begin by noting that W. Va.Code § 40–1–9 (1963) (Repl.Vol.2004), provides:

> Every such contract, every deed conveying any such estate or term, and every deed of gift, or trust deed or mortgage, conveying real estate shall be void, as to creditors, and subsequent purchasers for valuable consideration without notice, until and except from the time that it is duly admitted to record in the county wherein the property embraced in such contract, deed, trust deed or mortgage may be.

"The purpose of the statute is to protect a *bona fide* purchaser of land against creditors of the grantor, and against other persons to whom the grantor might have undertaken to execute title papers pertaining to the land embraced in the recorded instrument." *Bank of Marlinton v. McLaughlin,* 121 W.Va. 41, 44, 1 S.E.2d 251, 253 (1939).

■ As we have previously explained, "[w]hen a prospective buyer of an interest in real estate has reasonable grounds to believe that property may have been conveyed in an instrument not of record, he is obliged to use reasonable diligence to determine whether such previous conveyance exists." Syl. pt. 1, *Eagle Gas Co. v. Doran & Assocs., Inc.,* 182 W.Va. 194, 387 S.E.2d 99 (1989). As further reiterated, "[i]n general a party without *actual* notice may rely upon record titles in the office of the clerk of the county commission of the county in which the land is located."

*Id.,* 182 W.Va. at 197, 387 S.E.2d at 102. We also have held that

> [a] grantee in a conveyance of land, to be protected against a prior unrecorded deed for the same property, and to a different person, must be a complete purchaser, without notice of the prior deed, and have paid in full the purchase price for the land purchased by him; but he will be protected to the extent of any purchase money paid therefor before such prior deed is recorded.

Syl., *Alexander v. Andrews,* 135 W.Va. 403, 64 S.E.2d 487 (1951); *See also* Syl., in part, *United Fuel Gas Co. v. Morley Oil & Gas Co.,* 101 W.Va. 83, 131 S.E. 716 (1926) ("To be protected ... against a prior unrecorded deed, one must be a complete purchaser, must have had no notice of the prior contract or deed, and have paid all the purchase money for the land purchased by him.").

■ A bona fide purchaser of land is " 'one who purchases for a valuable consideration, paid or parted with, without notice of any suspicious circumstances to put him upon inquiry.' " *Stickley v. Thorn,* 87 W.Va. 673, 678, 106 S.E. 240, 242 (1921) (internal citations omitted). *See also* Syl. pt.2, in part, *Hupp v. Parkersburg Mill Co.,* 83 W.Va. 490, 98 S.E. 518 (1919) ("[T]he possession under the unrecorded deed is apparently consistent with that of the grantor having record title to all of the land on which there is such concurrent possession at different places, wherefore a purchaser from him is under no duty to prosecute his inquiry as to the title beyond the record and the possession by the holder of the recorded title."); *Simpson v. Edmiston,* 23 W.Va. 675, 680 (1884) ("[A] bona fide purchaser is one who buys an apparently good title without notice of anything calculated to impair or affect it[.]"); Black's Law Dictionary 1271 (8th ed.1999) (defining a "bona fide purchaser" as "[o]ne who buys something for value without notice of anoth-

---

*Clain–Stefanelli v. Thompson,* 199 W.Va. 590, 594, 486 S.E.2d 330, 334 (1997). Thus, as was held previously by this Court,

When a servient estate is sold, a prescriptive right-of-way over that estate is extinguished unless the purchaser of the servient estate has either actual or constructive notice of its existence. Where the prescriptive right-of-way is open and visible so that a reasonably careful inspection of the servient estate would disclose the existence of the right-of-way, the purchaser has constructive notice.

Syl. pt. 2, *Thompson, id.* As will be explained, Ms. Alpizar had neither actual nor constructive notice of the existence of any prescriptive easement. Thus, our analysis will focus on the relevant relationship between the appellants and Ms. Alpizar.

er's claim to the property and without actual or constructive notice of any defects in or infirmities, claims, or equities against the seller's title; one who has in good faith paid valuable consideration for property without notice of prior adverse claims."). As previously held by this Court, and more recently reiterated, " '[a] *bona fide* purchaser is one who actually purchases in good faith.' Syl. pt. 1, *Kyger v. Depue,* 6 W.Va. 288 (1873)." *Subcarrier Communications, Inc. v. Nield,* 218 W.Va. 292, 300, 624 S.E.2d 729, 737 (2005).

██ In the case before us, Ms. Alpizar searched the title of the property and was aware of the thirty-foot deeded right-of-way easement in favor of Mr. Ellison and Mr. Wolfe. Nowhere in the recorded documents was there any mention of any interest in title to the bridge. During purchase negotiations, Ms. Alpizar specifically asked Mrs. Brown about the bridge located on the property. Mrs. Brown indicated that the bridge came with the purchase of the land and that Ms. Alpizar would be the sole owner. At that point in time, Ms. Alpizar became a *bona fide* purchaser for value without notice. Ms. Alpizar, in essence, was an innocent purchaser and Mr. Wolfe's and Mr. Ellison's claims, even if valid, were extinguished by an innocent purchaser's, *i.e.* Ms. Alpizar's, acquisition of the land. The appellants have asserted no documentation of which Ms. Alpizar could have or should have been aware that would have alerted her to the appellants' claims to the bridge. All parties agree that the easement recorded in the deed transferring property title is not the location of the bridge, as the bridge is far north of the actual easement. Furthermore, all parties concede that the alleged easement at the bridge location was not recorded. Thus, there is no documentation that would have alerted Ms. Alpizar to the appellants' claims to the bridge.

Moreover, the appellants' allegations of receipts evidencing an agreement about the bridge fails because the alleged agreement was with the prior owner, Mrs. Brown, and it is not alleged that Ms. Alpizar had any way of knowing of the agreement. Such documentation was only presented at the point in time that the suit was filed, and was never presented prior to Ms. Alpizar's land purchase nor filed in the county land records. Even if the receipts are accurate, despite Mrs. Brown's challenges to their veracity, they are irrelevant as to the case against Ms. Alpizar because she had no notice and no way to know that any possible receipts existed. It is clear that Mr. Alpizar was a subsequent purchaser for valuable consideration without notice. Therefore, summary judgment in favor of Ms. Alpizar was proper, and the circuit court should be affirmed.

## IV.

## CONCLUSION

For the reasons set out in the body of this opinion, the order of the Circuit Court of Monroe County, entered on September 16, 2005, is affirmed.

Affirmed.