663 S.E.2d 631

**In re the Marriage of Connie Sue WHITESIDE, Petitioner Below, Appellant,**

v.

**Michael Brent WHITESIDE, Respondent Below, Appellee,**

and

**Equity Holdings, LLC, Intervenor Below, Appellee.**

**No. 33514.**

Supreme Court of Appeals of West Virginia.

Submitted Feb. 13, 2008.

Decided May 28, 2008.

**180**

Steven L. Thomas, Esq., Thomas H. Ewing, Esq., Kay, Casto & Chaney, PLLC, Charleston, WV, for Connie Whiteside.

W. Bradley Sorrells, Esq., Keith J. George, Esq., Robinson & McElwee, PLLC, Charleston, WV, for Equity Holdings, LLC.

MAYNARD, Chief Justice.

This case is before this Court upon appeal of a final order of the Circuit Court of Kanawha County entered on December 11, 2006. In that order, the circuit court denied the appeal filed by the appellant and petitioner below, Connie Sue Whiteside, now known as Connie Sue Varney (hereinafter "Ms. Varney"), of a November 30, 2006, order of the Family Court of Kanawha County entered in this divorce action against the appellee and respondent below, Michael Brent Whiteside (hereinafter "Mr. Whiteside").[1] In the November 30, 2006, order, the family court denied Ms. Varney's motion to void a deed which conveyed Mr. Whiteside's share in certain marital property to the appellee and intervenor below, Equity Holdings, LLC.

In this appeal, Ms. Varney contends that Equity Holdings was not a bona fide purchaser and that the conveyance was made to avoid equitable distribution. Thus, she argues that the family court erred by not voiding the deed pursuant to W.Va.Code § 48–7–108 (2001). This Court has before it the petition for appeal, the entire record, and the briefs and argument of counsel. For the reasons set forth below, the orders of the circuit court and family court are reversed, and this case is remanded for entry of an

order voiding the deed conveying Mr. Whiteside's interest in the subject property to Equity Holdings and a determination of whether Ms. Varney is entitled to an award of attorney's fees.

## I.

### FACTS

Ms. Varney and Mr. Whiteside were married on February 14, 1994. On April 8, 1996, they acquired five lots totaling nineteen acres in the Wildwood Addition of Charleston, Kanawha County, West Virginia. The property was owned by them as joint tenants with the right of survivorship. In 2000, the couple filed a voluntary petition under Chapter 7 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Southern District of West Virginia. On January 31, 2001, Ms. Varney filed a petition for divorce in the Family Court of Kanawha County. In the divorce petition, Ms. Varney sought equitable division of the marital property which included the Wildwood Addition lots.

While the divorce action was pending,[2] Arthur M. Standish, the trustee of the Whiteside bankruptcy estate, filed a motion with the bankruptcy court to sell the Wildwood Addition property to Equity Holdings, LLC, the intervenor below and the appellee herein. Thereafter, Ms. Varney filed an upset bid. Consequently, at a hearing on January 7, 2004, the bankruptcy court denied the motion to sell the property to Equity Holdings.[3] The bankruptcy court then advised the trustee to abandon the Wildwood Addition property and allow for its sale outside of the bankruptcy proceedings as it would have only netted $1,000.00 for the estate. The trustee followed this advice and abandoned the property as an asset of the bankruptcy estate on July 19, 2004.

1. Mr. Whiteside made no appearance in this appeal.

2. A bifurcated order was entered on March 31.2004, granting the parties a divorce.

3. During the bankruptcy hearing on the motion, Equity Holdings appeared and protested the court's refusal of the motion because it had already given Mr. Whiteside $5,000.00 toward the purchase of the property. Equity Holdings argued that it should be repaid the $5,000.00 if Ms. Varney purchased the property. The bankruptcy court disagreed stating, "[y]ou don't have a $5,000.00 investment in this property.... Equity Holdings has a $5,000.00 investment in Mr. Whiteside."

Subsequently, the family court entered the final equitable distribution order. The order, dated February 1, 2005, addressed the subject property as follows:

There exists one piece of real estate subject to equitable distribution, that being lots 62, 63, 64, 95 and 96 located in Wildwood Addition, Charleston, Kanawha County, West Virginia, which property has been valued by the Bankruptcy Court at $15,000. Both parties have stipulated that the value of this property is $15,000. The wife seeks an offset against the husband's interest in this property of $844.24 for one-half (½) of her redemption of said property for non-payment of taxes, $2,306.50 in attorney's fees for Attorney Steve Thomas who represented her in protecting her interest in this property before the Bankruptcy Court and $4,000 for one-half (½) the value of the Baldwin grand piano listed by the husband as an asset in Bankruptcy Court then sold by him. The Court finds that the wife is entitled to these off-sets against the husband's interests in said property. In the interest of settling this litigation, the husband has stated on the record that he has no objection to executing a deed conveying his interest in this property to his ex-wife. Robert Fletcher, an attorney practicing before the Bar of this Court, is hereby appointed special commissioner to execute the transfer of said property should the husband fail to do so.

Unbeknownst to the family court and Ms. Varney, Mr. Whiteside had already conveyed his one-half undivided interest in the five Wildwood Addition lots to Equity Holdings for $6,000.00 by deed dated July 23, 2004. Mr. Whiteside never advised the family court that he had already conveyed his interest in the property to Equity Holdings.

After Ms. Varney learned that Mr. Whiteside had conveyed his interest in the property to Equity Holdings, she filed a motion with the family court seeking to void the deed and enforce the February 1, 2005, order. Equity Holdings then filed a motion to intervene in the divorce case [4] and also filed a motion to dismiss Ms. Varney's motion. On November 30, 2006, the family court denied Ms. Varney's motion and granted Equity Holdings' motion to dismiss. The family court found that Equity Holdings was a bona fide purchaser without notice of any fact or condition that would support setting aside the deed it received from Mr. Whiteside. Ms. Varney then filed an appeal with the circuit court. By order entered December 11, 2006, the circuit court denied the appeal.[5]

## II.

### STANDARD OF REVIEW

In *Carr v. Hancock*, 216 W.Va. 474, 476, 607 S.E.2d 803, 805 (2004), we advised that:

This Court's standard of review for an appeal from a circuit court that reviewed a family court's final order, or refused to consider a petition for appeal to review a family court's final order, is the same. In reviewing a final order entered by a circuit court judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo.*

*See* W.Va.Code § 51–2A–15(b) (2001). Accordingly, with these standards in mind, we now consider the parties' arguments.

## III.

### DISCUSSION

The issue presented in this case is whether the family court erred by not voiding the deed transferring Mr. Whiteside's undivided one-half interest in the subject property to

4. Equity Holdings' motion to intervene was granted by order entered on January 30, 2006.

5. On September 23, 2005, Ms. Varney filed a separate action against Equity Holdings in the Circuit Court of Kanawha County alleging that she is a co-owner of the subject property with

Equity Holdings and seeking a partition pursuant to W.Va.Code § 37–4–3 (1957). Equity Moldings responded with its own request for a partition. The case has been stayed pending the outcome of this appeal.

Equity Holdings. W.Va.Code § 48–7–108 provides, in pertinent part:

> A husband or wife may alienate property at any time prior to the entry of an order under the provisions of this article or prior to the recordation of a notice of lis pendens in accordance with the provisions of part 7–401, *et seq.* [§§ 48–7–401 through 48–7–402], and at anytime and in any manner not otherwise prohibited by an order under this chapter, in like manner and with like effect as if this article and the doctrine of equitable distribution had not been adopted: Provided, That as to any transfer prior to the entry of an order under the provisions of this article, a transfer other than to a bona fide purchaser for value shall be voidable if the court finds such transfer to have been effected to avoid the application of the provisions of this article or to otherwise be a fraudulent conveyance.

Ms. Varney contends that Equity Holdings was not a bona fide purchaser of Mr. Whiteside's share of the Wildwood Addition property. She points out that counsel for Equity Holdings and its principal were present at the bankruptcy hearing on January 7, 2004, and that the Whiteside divorce was mentioned many times. Furthermore, counsel for Equity Holdings specifically acknowledged to the bankruptcy court that Equity Holdings was aware of the divorce. Ms. Varney also notes that her counsel advised during that hearing that she intended to request that any monies owed to her by Mr. Whiteside be offset against his share of the property. Thus. Ms. Varney maintains that since Equity Holdings knew about the divorce action, knew of her claims against Mr. Whiteside, and knew that she was going to request that her claims be offset against Mr. Whiteside's share of the property, it was not a bona fide purchaser.

Ms. Varney also contends that Mr. Whiteside transferred his interest in the property to Equity Holdings to deprive her of her right to equitable distribution. She notes that the bankruptcy trustee expressed concern about Mr. Whiteside trying to sell the property to Equity Holdings during the hearing on January 7, 2004. Moreover, at the January 5, 2005, final hearing before the family court, Mr. Whiteside concealed the fact that he had already conveyed his share of the property to Equity Holdings. He failed to amend his disclosure and represented to the court that he still retained his interest in the property. Ms. Varney concludes that Mr. Whiteside's actions show that he transferred the property in order to avoid equitable distribution.

In response, Equity Holdings acknowledges that it knew about the Whiteside divorce but claims that the deed should not be voided because there was no equitable distribution order in place at the time of the conveyance and a notice of lis pendens had not been recorded. Equity Holdings also argues that the claims made by Ms. Varney during the bankruptcy hearing were contingent, unliquidated, and not apparently tied to the property. Equity Holdings maintains that Ms. Varney's claims were only defined in vague terms, and it can not be charged with knowledge of an equitable distribution claim that was never clearly established.

Equity Holdings further contends that there is no evidence that Mr. Whiteside made the transfer to avoid equitable distribution. Equity Holdings argues that in the absence of such evidence, the deed cannot be voided. Equity Holdings says that should this Court conclude that it was not a bona fide purchaser, then the case should be remanded for further evidentiary development with regard to whether the transfer was a fraudulent conveyance or was effected to avoid equitable distribution.

Upon review of the record, we find that the family court erred when it concluded that Equity Holdings was a bona fide purchaser of Mr. Whiteside's share of the subject property. This Court has long held that, " 'A *bona fide* purchaser is one who actually purchases in good faith.' Syllabus point 1, *Kyger v. Depue*, 6 W.Va. 288 (1873)." Syllabus Point 4, *Wolfe v. Alpizar*, 219 W.Va. 525, 637 S.E.2d 623 (2006).

> We have also described a bona fide purchaser of land as " 'one who purchases for a valuable consideration, paid or parted with, without notice of any suspicious circumstances to put him upon inquiry,' "

*Stickley v. Thorn,* 87 W.Va. 673, 678, 106 S.E. 240, 242 (1921) (quoting *Carpenter Paper Co. v. Wilcox,* 50 Neb. 659, 70 N.W. 228 (1897)). *See also Simpson v. Edmiston,* 23 W.Va. 675, 680 (1884) ("[A] *bona fide* purchaser is one who buys an apparently good title without notice of anything calculated to impair or affect it."); Black's Law Dictionary 1249 (7th ed.1999) (defining a bona fide purchaser as "[o]ne who buys something for value without notice of another's claim to the item or of any defects in the seller's title; one who has in good faith paid valuable consideration for property without notice of prior adverse claims.").

*Subcarrier Communications, Inc. v. Nield,* 218 W.Va. 292, 300, 624 S.E.2d 729, 737 (2005).

This Court has further held,

"That which fairly puts a party on inquiry is regarded as sufficient notice, if the means of knowledge are at hand; and a purchaser, having sufficient knowledge to put him on inquiry, or being informed of circumstances which ought to lead to such inquiry, is deemed to be sufficiently notified to deprive him of the character of an innocent purchaser." Syl. pt. 3, *Pocahontas Tanning Co. v. St. Lawrence Boom & Mfg. Co.,* 63 W.Va. 685, 60 S.E. 890 (1908). Syllabus Point 3, *Gullett v. Burton,* 176 W.Va. 447, 345 S.E.2d 323 (1986). Given the fact that Equity Holdings had actual notice of the divorce proceedings and Mrs. Varney's intention to make claims against Mr. Whiteside's share of the property, Equity Holdings simply does not fit within the definition of a bona fide purchaser.

We reject Equity Holdings' argument that it need not have been a bona fide purchaser because no equitable distribution order was in place at the time of the conveyance. Essentially, Equity Holdings would have this Court ignore that portion of W.Va. Code § 48–7–108 which provides, "[t]hat as to any transfer prior to the entry of an order under the provisions of this article, a transfer other than to a bona fide purchaser for value shall be voidable if the court finds such transfer to have been effected to avoid the application of the provisions of this article or

to otherwise be a fraudulent conveyance." However, this Court has long held that, " 'In ascertaining legislative intent, effect must be given to each part of the statute and to the statute as a whole so as to accomplish the general purpose of the legislation.' Syl. Pt. 2, *Smith v. State Workmen's Compensation Commissioner,* 159 W.Va. 108, 219 S.E.2d 361 (1975)." Syllabus Point 3, *State ex rel. Fetters v. Hott,* 173 W.Va. 502, 318 S.E.2d 446 (1984). In other words, "A cardinal rule of statutory construction is that significance and effect must, if possible, be given to every section, clause, word or part of the statute." Syllabus Point 3, *Meadows v. Wal–Mart Stores, Inc.,* 207 W.Va. 203, 530 S.E.2d 676 (1999). Also, "[w]here the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation." Syllabus Point 2, *State v. Elder,* 152 W.Va. 571, 165 S.E.2d 108 (1968).

Applying our rules of statutory construction, W.Va.Code § 48–7–108 clearly provides that a transfer of property by a husband or wife prior to entry of an equitable distribution order is voidable if the transfer is not to a bona fide purchaser and was made for the purpose of avoiding application of the equitable distribution statutes or was otherwise a fraudulent conveyance. As discussed above, Equity Holdings had actual knowledge of the divorce proceedings and Ms. Varney's claims against Mr. Whiteside. Such knowledge precludes Equity Holdings from claiming the status of a bona fide purchaser.

Having found that Equity Holdings was not a bona fide purchaser, we must now consider whether there is sufficient evidence that Mr. Whiteside transferred his share in the subject property to Equity Holdings in an attempt to avoid application of equitable distribution statutes. The record shows that Mr. Whiteside conveyed his share of the property to Equity Holdings just five days after the property was abandoned by the bankruptcy trustee. Then, approximately seven months later, Mr. Whiteside appeared before the family court and not only failed to disclose the transfer, but actually represented to the family court that he still owned his share of the property and that he would deed the same to Ms. Varney to satisfy her claims

against him. Given these facts, we find that Mr. Whiteside's actions clearly establish an intent to avoid application of the equitable distribution statutes.

Based on all the above, we now hold that when a party to a divorce case undertakes—before the final order of equitable distribution in the case is effective—to transfer real property to a third party having actual knowledge of the divorce proceedings, the transfer is effective only to the extent it does not conflict with the equitable distribution order unless the other party to the divorce joins in the transfer. To the extent the attempted transfer conflicts with the order of equitable distribution and there is evidence that the transfer was made to avoid application of the equitable distribution statutes or was otherwise a fraudulent conveyance, it is void.[6] Given our findings in this case, we conclude that the family court erred by not voiding the deed which conveyed Mr. Whiteside's share of the property to Equity Holdings pursuant to W.Va.Code § 48–7–108. Equity Holdings was not a bona fide purchaser and Mr. Whiteside clearly transferred his share of the property to avoid application of the equitable distribution statutes. Accordingly, we must reverse the order of the Circuit Court of Kanawha County entered on December 11, 2006, and the order of the Family Court of Kanawha County entered on November 30, 2006, and remand this case to the circuit court with directions to remand the case to the family court for the purpose of entering an order voiding the deed executed by Mr. Whiteside on July 23, 2004, conveying his interest in the subject property to Equity Holdings.

We note that upon remand, the family court has the discretion to determine whether Ms. Varney is entitled to an award of attorney's fees. In that regard, W.Va. Code § 48–5–611(c) (2001) provides that,

When it appears to the court that a party has incurred attorney's fees and costs unnecessarily because the opposing party has asserted unfounded claims or defenses for vexatious, wanton or oppressive purposes, thereby delaying or diverting attention

from valid claims or defenses asserted in good faith, the court may order the offending party, or his or her attorney, or both, to pay reasonable attorney's fees and costs to the other party.

Accordingly, we now hold that pursuant to W.Va.Code § 48–5–611(c), a party in a divorce proceeding may be awarded reasonable attorney's fees and costs that were incurred unnecessarily because the opposing party acted in bad faith, vexatiously, wantonly, or for oppressive reasons. Therefore, in this instance, the family court has the discretion to determine whether Ms. Varney is entitled to an award of attorney's fees from either Mr. Whiteside or Equity Holdings or from both jointly and severally.

## IV.

## CONCLUSION

Accordingly, for the reasons set forth above, the final order of the Circuit Court of Kanawha County entered on December 11, 2006, and the final order of the Family Court of Kanawha County entered on November 30, 2006, are reversed, and this case is remanded to the circuit court with instructions to remand the case to the family court for additional proceedings consistent with this opinion including entry of an order voiding the deed executed by Mr. Whiteside on July 23, 2004, conveying his interest in the subject property to Equity Holdings and for distribution of said real estate in accordance with the order of the family court entered on February 1, 2005, and a determination of whether Ms. Varney is entitled to an award of attorney's fees.

Reversed and Remanded with Directions.

Justice BENJAMIN, deeming himself disqualified, did not participate in the decision in this case.

Judge ALSOP, sitting by special assignment.

---

6. We note that in practice, the safest course for parties to a divorce action is for each to file a proper notice of lis pendens with respect to the real property subject to the jurisdiction of the family court in the divorce case. *See* W.Va.Code § 48–7–401 (2001).