724 S.E.2d 299

**J.A. STREET & ASSOCIATES, INC., Defendant/Third–Party Plaintiff Below, Petitioner**

v.

**THUNDERING HERD DEVELOPMENT, LLC, a West Virginia Limited Liability Company, and THD Investors 7, LLC, a West Virginia Limited Liability Company; and S&ME, Inc., a foreign corporation; and CTL Engineering of West Virginia, Inc., a West Virginia Corporation, and Bizzack, Inc., a foreign corporation, Plaintiffs, Defendants/Third–Party Plaintiffs Below, Respondents.**

No. 101379.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 7, 2011.

Decided Nov. 18, 2011.

James D. McQueen, Jr., Amanda J. Davis, Baker Davis & McQueen, PLLC, Huntington, WV, for Petitioner, J.A. Street & Associates, Inc.

William R. Slicer, Christopher D. Negley, Shuman, McCuskey & Slicer, PLLC, Charleston, WV, Respondent, S&ME, Inc.

DAVIS, Justice:

The petitioner herein and defendant/third-party plaintiff below, J.A. Street & Associates, Inc. (hereinafter "Street"), appeals from an order entered September 24, 2010, by the Circuit Court of Cabell County. By that order, the circuit court affirmed its previous order of July 20, 2010, and certified it as a final order pursuant to Rule 54(b) of the West Virginia Rules of Civil Procedure. The July 20, 2010, order granted the partial motion for summary judgment requested by the respondent herein and defendant/third-party plaintiff below, S&ME, Inc. (hereinafter "S&ME"), and dismissed Street's amended cross-claims against S&ME that sought recovery of remediation costs incurred by Street in 2003. The lower court granted partial summary judgment based on its determination that some of Street's cross-claims were time-barred by the applicable statute of limitations [1] and that W. Va.Code § 55–2–21 (1981) (Repl.Vol.2008) [2] did not apply to toll any limitations periods because Street's claims were independent causes of action as opposed to cross-claims. On appeal to this Court, Street argues that W. Va.Code § 55–2–21 tolled the running of the statute of limitations as to its cross-claims against S&ME. Alternatively, Street argues that the discovery rule applies and that genuine issues of material fact exist such that summary

---

1. W. Va.Code § 55–2–12(c) (1959) (Repl.Vol. 2008) provides applicable time periods in which certain causes of action must be filed after the accrual of such action. The lower court found that a determination of whether a one-year or two-year limitation applied was not necessary because Street's independent claims would be time-barred regardless of which time frame was applied.

2. The full text of W. Va.Code § 55–2–21 (1981) (Repl.Vol.2008) is set forth and discussed later in this Opinion. *See Discussion,* § IV.A., *infra.*

judgment was improper. Based upon the parties' written submissions and oral arguments, the record designated for our consideration, and the pertinent authorities, we find that the lower court erred in its grant of summary judgment. Thus, this case is reversed and remanded for further proceedings consistent with this Opinion.

## I.

### FACTUAL HISTORY

Briefly, this case involves a dispute regarding developed property known as the Merritt Creek Farms Development (hereinafter "Merritt Creek") in Cabell County, West Virginia. The interested parties before this Court are Street, the project's general contractor, and S&ME, a geotechnical engineering firm. While there are only two parties involved in this appeal, a clear understanding of the facts requires a basic knowledge of the other entities who appeared before the circuit court. Thundering Herd Development, LLC., and THD Investors 7, LLC., (hereinafter "THD," collectively) own the development. Bizzack, Inc. (hereinafter "Bizzack"), is a grading contractor, and CTL Engineering of West Virginia, Inc. (hereinafter "CTL"), is an engineering firm. Finally, SITE, Inc. (hereinafter "SITE"), was the civil engineer for the project.

S&ME and Street disagree on several factual assertions, as well as the impact of these disputes on this case. These discrepancies will be discussed, when relevant, in the Discussion section of this Opinion. *See generally* § IV, *infra*. A summary of the undisputed facts is as follows.

In 2000, THD began exploring developing ideas for the future Merritt Creek project. THD contracted with S&ME in 2001 for a preliminary geotechnical evaluation of the site, which provided recommendations regarding site preparation.[3] Construction of the site began in July of that same year based on the design by SITE. In late September 2001, there was a failure of an engineered fill slope at the southeast corner of

the area known as the Target store. In September and October 2001, fill was placed in the area known as "Shops A," which was on the western portion of Merritt Creek, in a different location than the Target store. The Shops A buildings, in late 2002, began showing damage due to settlement. S&ME, on February 24, 2003, investigated the settlement and issued a report of its findings and conclusions, titled "Geotechnical Evaluation of Settlements, Shops A—Merritt Creek Farm Retail Center."

After receipt of S&ME's report, Street, by letter dated April 22, 2003, wrote to Bizzack, the "land mover" contractor. Street's correspondence informed Bizzack that "S&ME ... feels that the placement of the fill was not in accordance with the original recommendation and was the cause of the settlement." The letter further requests Bizzack's opinion regarding placement of fill. Bizzack responded in writing on May 8, 2003, and disputed the assertion that there was any problem with fill placement. Bizzack's letter to Street explained that all fill placement was monitored by CTL, who did not object to any placements or fill materials during site preparation. Bizzack stated that it "believe[s] that the problems that you [Street] are experiencing are not related to the placement of the fill." Street responded to Bizzack on June 2, 2003. The letter detailed some of the repair work and costs that Street had absorbed as a result of the "settlement of Shop 'A' which ... has been attributed to filling not in accordance with specifications." Street expressed concern that Bizzack had not followed all soil specifications at construction. Further, Street wrote that "[t]he problem with Shop 'A' settlement is coming to a head and we feel a meeting with all parties in the near future will give us direction and determine who is responsible for this failure and the ultimate cost." Subsequently, THD contracted with an engineer, George Cross, who prepared a report in May 2007. Mr. Cross's report noted the presence of ground-

---

3. S&ME was not contracted with to monitor the construction during site preparation. Rather,

CTL monitored and approved site formulation.

water in the fill.[4]

## II.

## PROCEDURAL HISTORY

THD filed its initial complaint in the Circuit Court of Cabell County on June 9, 2003, naming S&ME as the sole defendant. The complaint alleged that S&ME had negligently provided recommendations with respect to site preparation for the Target store area, as well as the remainder of the planned Merritt Creek site. On December 11, 2007, THD amended its complaint to name petitioner, Street, as well as several other defendant entities who are not parties to this appeal. S&ME then cross-claimed against Street and filed third-party claims against CTL and Bizzack. Bizzack then counterclaimed against S&ME. Street filed its answer and counterclaim against THD; and, on January 14, 2008, filed cross-claims against S&ME; and filed third-party claims against CTL and Bizzack.[5] In its cross-claim against S&ME, Street sought to recover monies that it expended in its effort to remediate settlement damage caused by settlement of the fill material and asserted a claim for contribution and/or indemnification from any judgment that THD may obtain on its claims.

On December 8, 2009, Street filed a motion for leave to amend its cross-claims, which amendments form the underlying basis of this appeal.[6] The amended cross-claims ex-

panded the original claims and set forth allegations that S&ME negligently failed to identify potential groundwater problems at Shops A. Street's amended cross-claims further requested recovery of the monies Street expended in 2003 to remediate the settlement issues on the property. S&ME moved to dismiss Street's amended cross-claims. The basis for the motion to dismiss was that the cross-claims set forth separate, distinct claims for damages that Street asserts it incurred in 2003 and that S&ME argues are unrelated to the claims THD made for damages.[7] In its argument to the circuit court, S&ME contended that Street's cause of action accrued in 2003, and, therefore, it was time-barred by the statute of limitations. Street, however, countered that its claims were not time-barred because the factual basis for its cause of action was the 2007 geotechnical report authored by Mr. Cross that found the presence of significant groundwater and causally connected the groundwater to the settlement issues.

The circuit court granted S&ME's motion for partial dismissal of Street's amended cross-claims,[8] treating the motion as one for summary judgment due to the documents and exhibits filed with the court. The circuit court found, in its order dated July 20, 2010, that

> on October 8, 2003, S&ME issued a report of its observation of the installation of

---

4. There is a factual dispute as to when Street knew, or should have known, of the presence of groundwater in the fill. The lower court found that Street was in possession of reports authored by S&ME in 2003 that "identified and pointed out the potential presence of water in the fill." However, there is a challenge as to the interpretation of those reports and Street asserts that the reports failed to identify groundwater as a causal agent in the settlement issues.

5. Street did not serve the third-party complaints against CTL or Bizzack.

6. The lower court found that Street's amended cross-claims was the first time that Street asserted a cause of action with regard to the Shops A area of the development. However, this is a point of contention and the parties disagree as to whether Street's initial cross-claim encompassed Shops A, or whether the Shops A area was not part of Street's claims until the filing of its amended cross-claim.

7. There is a dispute between the parties as to whether the Shops A area was included in the original complaint filed by THD against S&ME. Street asserts that Shops A was not part of the original claim; however, S&ME argues that Shops A was, indeed, included in the complaint at various locations, referring to "other areas of the development."

8. Briefly, S&ME moved only for the dismissal of Street's cross-claims for its separate, distinct, and independent claim for damages. Therefore, only Street's claims for damages that it alleges it incurred in 2003 for the repair of Shops A were dismissed under the circuit court's order granting partial summary judgment. Street's derivative cross-claims dealing with alleged indemnification and/or contribution from any judgment that THD may obtain on its claims were unaffected by the partial summary judgment and remain pending in the circuit court.

drilled piers during the initial, 2003 stabilization of Shops A. This report stated that water was observed in several of the borings for the drilled piers. Additionally a November 13, 2003[,] report from S&ME to THD relating to Shops A specifically points out that groundwater was seeping out from the fill material in the vicinity of Shops A. Geotechnical engineer George Cross testified in his deposition on June 23, 2010[,] that both of these findings indicated the presence of groundwater in the fill. [Street] received both of these reports.

. . . .

Further, by November 13, 2003, [Street] was in possession of several reports that identified and pointed out the potential presence of water in the fill.

In so ruling, the lower court determined that Street had knowledge of an independent action against S&ME in 2003;[9] therefore, the court ruled that Street's claims were time-barred under W. Va.Code § 55–2–12 (1959) (Repl.Vol.2008).[10] The circuit court held that Street was not a party to the action until 2007, and, by that time, its individual cause of action against S&ME for damages Street incurred in 2003 was already time-barred. Street then filed a motion, which the lower court disposed of pursuant to Rule 59(e) of the West Virginia Rules of Civil Procedure, seeking an alteration or amendment of the grant of summary judgment. In its denial of the motion for alteration or amendment, the lower court directed entry of a final judgment as to the issue of the application of W. Va.Code § 55–2–21 thus allowing Street to appeal immediately to this Court.

## III.

### STANDARD OF REVIEW

 The appeal before this Court stems from the circuit court's order granting summary judgment in favor of S&ME on its partial motion to dismiss[11] amended cross-claims asserted by Street, as well as a subsequent denial of Street's Rule 59(e)[12] motion for reconsideration.[13] It is well-settled that this Court "exercise[s] plenary review over a circuit court's decision to grant either a motion to dismiss or a summary judgment." *Conrad v. ARA Szabo*, 198 W.Va. 362, 369, 480 S.E.2d 801, 808 (1996). Further, it has long been held that "[a] circuit court's entry of summary judgment is reviewed *de novo*." Syl. pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994). The same *de novo*

9. Street disagrees with the circuit court's finding that Street received two reports in 2003 that should have alerted it to the groundwater issue. The reports received by Street may have observed the presence of groundwater; however, as asserted by Street, those reports indicated the settlement damage to be caused by improper fill placement and never attributed such problems to the presence of groundwater. Street continues the argument by delineating that the connection between the groundwater and the settlement damage was not evident until the 2007 report by Mr. Cross.

10. *See* note 1, *supra.*

11. The original motion was based on Rule 12 of the West Virginia Rules of Civil Procedure. However, as recognized by the circuit court, extensive discovery had occurred and both parties had attached numerous exhibits and documents to their underlying briefs for its consideration. Therefore, the circuit court converted the motion into one for summary judgment governed by Rule 56 of the West Virginia Rules of Civil Procedure.

12. Street moved for reconsideration pursuant to Rule 60 of the West Virginia Rules of Civil Procedure. However, the motion was filed within ten days of the order that granted summary judgment; therefore, the lower court disposed of the request as one made pursuant to Rule 59(e) of the West Virginia Rules of Civil Procedure. *See* Syl. pt. 2, in part, *Powderidge Unit Owners Ass'n v. Highland Props., Ltd.*, 196 W.Va. 692, 474 S.E.2d 872 (1996) ("If the motion is filed within ten days of the circuit court's entry of judgment, the motion is treated as a motion to alter or amend under Rule 59(e).").

13. Street's motion also requested relief under Rule 54(b) of the West Virginia Rules of Civil Procedure. We have explained that "[a]n otherwise interlocutory order that is not expressly certified as final by using the language required by Rule 54(b) of the West Virginia Rules of Civil Procedure remains interlocutory so long as the affected party does not seek an appeal." Syl. pt. 3, in part, *Hubbard v. State Farm Indem. Co.*, 213 W.Va. 542, 584 S.E.2d 176 (2003). The circuit court granted Street's request and certified that the rulings that pertained to the application of the statute of limitations and W. Va.Code § 55–2–21 were final and appealable.

standard of review applies to the denial of the Rule 59(e) motion to alter or amend:

> " 'The standard of review applicable to an appeal from a motion to alter or amend a judgment, made pursuant to W. Va. R. Civ. P. 59(e), is the same standard that would apply to the underlying judgment upon which the motion is based and from which the appeal to this Court is filed.' Syllabus point 1, *Wickland v. American Travellers Life Insurance Co.*, 204 W.Va. 430, 513 S.E.2d 657 (1998)." Syllabus point 2, *Bowers v. Wurzburg*, 205 W.Va. 450, 519 S.E.2d 148 (1999).

Syl. pt. 1, *Alden v. Harpers Ferry Police Civil Serv. Comm'n,.* 209 W.Va. 83, 543 S.E.2d 364 (2001).

▇ In undertaking our *de novo* review, we apply the same standard for granting summary judgment that is applied by the circuit court:

> " 'A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law.' Syllabus Point 3, *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963)." Syllabus Point 1, *Andrick v. Town of Buckhannon*, 187 W.Va. 706, 421 S.E.2d 247 (1992).

Syl. pt. 2, *Painter*, 192 W.Va. 189, 451 S.E.2d 755. Moreover,

> [s]ummary judgment is appropriate where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove.

Syl. pt. 4, *Painter, id.* We also are cognizant that "[t]he circuit court's function at the summary judgment stage is not to weigh the evidence and determine the truth of the matter, but is to determine whether there is a genuine issue for trial." Syl. pt. 3, *Painter, id.*

▇ Additionally, resolution of this matter requires the application of a statute:

> " 'Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review.' Syllabus point 1, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995)." Syllabus point 3, *Alden v. Harpers Ferry Police Civil Service Commission*, 209 W.Va. 83, 543 S.E.2d 364 (2001).

Syl. pt. 1, *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005). To fully dispose of this case, this Court also must analyze Rule 13(g) of the West Virginia Rules of Civil Procedure. In cases where we are called upon to construe a rule, we are guided by the proposition that "[a]n interpretation of the *West Virginia Rules of Civil Procedure* presents a question of law subject to a *de novo* review." Syl. pt. 4, *Keesecker v. Bird*, 200 W.Va. 667, 490 S.E.2d 754 (1997). Mindful of these applicable standards, we proceed to consider the parties' arguments.

## IV.

## DISCUSSION

On appeal to this Court, Street assigns error to the circuit court's ruling that W. Va.Code § 55–2–21 does not apply to toll the statute of limitations. The circuit court's determination relied on its decision that Street's cross-claims were truly independent causes of action. Alternatively, Street argues that the circuit court incorrectly denied application of the discovery rule to toll the statute of limitations. We will address each of these issues in turn.

### A. Construction of W. Va.Code § 55–2–21

Street first argues that the circuit court erred in its finding that its cross-claims were truly independent claims, such that the tolling provision for cross-claims in W. Va.Code § 55–2–21 did not apply. In support of its argument, Street advocates that W. Va.Code § 55–2–21 specifically denotes a cross-claim as an included claim and states that it shall be deemed to toll the running of any statute of limitations with respect to any claim. Thus, Street contends that, as a matter of law, § 55–2–21 tolls the running of the statute of limitations on its cross-claims against S&ME.

As explained by Street, the original complaint filed by THD in 2003 made no reference to damages derived from settlement at Shops A; rather, the complaint referred only to the slope failure at the Target store area located on the opposite end of the development and a significant distance from Shops A. Street argues that its cross-claim against S&ME related to problems with Shops A and to the presence of previously undetected groundwater, which was a major contributing cause of the damage, but was unknown to Street or any other party until the May 2007 report of Mr. Cross. Damage with respect to Shops A was not part of litigation until THD filed its amended complaint in December 2007, which also added Street as a defendant to the litigation. Street's theory of recovery is that S&ME negligently failed to investigate and detect either the presence or the effect of significant groundwater under Shops A in 2003. Street contends that it did not have a good faith, factual basis to make such a claim until May 2007.

S&ME rejects Street's assertion that its claims are properly styled as cross-claims. Rather, S&ME contends that Street's claims are independent claims; therefore, according to S&ME, W. Va.Code § 55–2–21 does not apply to this case. S&ME supports the circuit court's ruling, which stated that

> [Street] cannot use W. Va.Code § 55–2–21 to excuse its own lack of diligence over the course of five years in pursuing a claim that it knew or should have known of as far back as 2003. In this case, [Street] was not a party to THD's suit until late 2007. By the time it was made a party, its independent claims for damages it incurred in 2003 were already time barred.... As such, the Court concludes that W. Va.Code § 55–2–21 does not operate to toll [Street's] independent cross-claims against S&ME seeking to recover monies it allegedly incurred in 2003 on Shops A for which it alleges it was not paid.

▮ At issue in this case is the construction of W. Va.Code § 55–2–21, which states as follows:

> After a civil action is commenced, the running of any statute of limitation shall be tolled for, and only for, the pendency of that civil action as to any claim which has been or may be asserted therein by counterclaim, whether compulsory or permissive, cross-claim or third-party complaint: Provided, that if any such permissive counterclaim would be barred but for the provisions of this section, such permissive counterclaim may be asserted only in the action tolling the statute of limitations under this section. This section shall be deemed to toll the running of any statute of limitation with respect to any claim for which the statute of limitation has not expired on the effective date of this section [July 6, 1981], but only for so long as the action tolling the statute of limitations is pending.

In our analysis of statutes, we have explained that the first step is to identify the intent expressed by the Legislature in promulgating the provision at issue. "The primary object in construing a statute is to ascertain and give effect to the intent of the Legislature." Syl. pt. 1, *Smith v. State Workmen's Comp. Comm'r*, 159 W.Va. 108,. 219 S.E.2d 361 (1975). Then, we study the particular language used by the Legislature. "Where the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation." Syl. pt. 2, *State v. Elder*, 152 W.Va. 571, 165 S.E.2d 108 (1968). *Accord* Syl. pt. 5, *State v. Gen. Daniel Morgan Post No. 548, Veterans of Foreign Wars*, 144 W.Va. 137, 107 S.E.2d 353 (1959) ("When a statute is clear and unambiguous and the legislative intent is plain, the statute should not be interpreted by the courts, and in such case it is the duty of the courts not to construe but to apply the statute."); Syl. pt. 2, *State v. Epperly*, 135 W.Va. 877, 65 S.E.2d 488 (1951) ("A statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect.").

▮ Applying these principles to the current statute under review, we find that the wording is clear: "After a civil action is commenced, the running of any statute of limitation *shall* be tolled for ... the pendency of that civil action as to any claim

which has been or may be asserted therein by ... cross-claim[.]" (Emphasis added). This language clearly communicates that a statute of limitation is tolled for any cross-claims during the pendency of any civil action, which the Legislature chose to convey using the mandatory term "shall." As this Court previously has held: " 'It is well established that the word "shall," in the absence of language in the statute showing a contrary intent on the part of the Legislature, should be afforded a mandatory connotation.' Syllabus Point 1, *Nelson v. West Virginia Public Employees Insurance Board,* 171 W.Va. 445, 300 S.E.2d 86 (1982)." Syl. pt. 1, *E.H. v. Matin,* 201 W.Va. 463, 498 S.E.2d 35 (1997).

Accordingly, based on the nondiscretionary, mandatory language of the statute, we hold that, pursuant to W. Va.Code § 55–2–21 (1981) (Repl.Vol.2008), during the pendency of a civil action, the statute of limitation shall be tolled as to any cross-claim that has been or may be asserted therein.

This clear language illustrates the fallacy in the circuit court's reasoning that "[Street] cannot use W. Va.Code § 55–2–21 to excuse its own lack of diligence over the course of five years in pursuing a claim that it knew or should have known of as far back as 2003." The circuit court's rationale adds an element to the statute that simply does not exist: the statute does not require a showing of due diligence in bringing a cross-claim. It simply states that the statute of limitation is tolled as to any cross-claims that may be filed while the civil action is pending.

To be clear, the parties do not offer different interpretations of the statute. Instead, they disagree as to whether the statute applies in the first instance, which application is based on the classification of Street's claims against S&ME as either a cross-claim or as an independent cause of action. While W. Va.Code § 55–2–21 speaks to the filing of a cross-claim, it is silent as to the definition of a cross-claim. The trial court determined that Street's claims are not properly classified as cross-claims; however, the trial court's order is devoid of any analysis of the definition of a cross-claim within the meaning of Rule 13(g) of the West Virginia Rules of Civil Procedure. Rule 13(g) provides:

**(g) Cross–Claim against co-party.**—A pleading may state as a cross-claim any claim by one party against a co-party arising out of the transaction or occurrence that is the subject matter either of the original action or of a counterclaim therein or relating to any property that is the subject matter of the original action. Such cross-claim may include a claim that the party against whom it is asserted is or may be liable to the cross-claimant for all or part of a claim asserted in the action against the cross-claimant.

W. Va. R. Civ. P. 13(g).

The key language in this Rule defining "cross-claims" is the phrase "arising out of the transaction or occurrence." While we have discussed this expression in regard to other rules, it does not appear that this Court has ever addressed this language under the specific rule, Rule 13(g), at issue herein. It has been noted, with reliance on the case of *Maritime Ventures International, Inc. v. Caribbean Trading & Fidelity Ltd.,* 689 F.Supp. 1340 (S.D.N.Y.1988), that

[c]ourts have identified three nonexclusive factors to be considered in determining whether a cross-claim arises out of the same transaction or occurrence as the original action: (1) the identity of facts between the initial claim and the cross-claim; (2) mutuality of proof; and (3) the logical relationship between the original claim and the cross-claim.

Franklin D. Cleckley, Robin J. Davis, & Louis J. Palmer, Jr., *Litigation Handbook on the West Virginia Rules of Civil Procedure,* § 13(g), at 392 (3d ed.2008). It has been recognized that the common requirement in Rules 13(a) and 13(g) that claims arise from the same transaction or occurrence results in the Rule 13(a) definition being instructional to the definition of the same terms used in Rule 13(g). *See generally Painter v. Harvey,* 863 F.2d 329 (4th Cir.1988). Factors to consider, as pointed out in *Painter,* are as follows: (1) Are the issues of fact and law largely the same? (2) Will substantially the same evidence support or refute the complaint as well as the cross-claim? (3) Is there any logical relationship between the complaint and the cross-claim?

*Painter, id.* at 331. *Accord Zurn Indus., Inc. v. Acton Constr. Co., Inc.,* 847 F.2d 234, 238 (5th Cir.1988) (finding that, when cross-claim and counterclaim arose from same transaction and occurrence, both Rule 13(g) and Rule 13(a) were satisfied); *United States v. Gilbert,* 478 F.Supp. 306, 312 n. 9 (S.D.N.Y.1979) (utilizing Second Circuit case defining "transaction and occurrence" for Rule 13(a) to decide challenge based on Rule 13(g) (citation omitted)). Accordingly, we now hold that, to determine whether a cross-claim arises out of the same transaction or occurrence as the original action, there are three nonexclusive factors to be considered: (1) the identity of facts and law between the initial claim and the cross-claim; (2) the mutuality of proof and whether substantially the same evidence will support or refute both the complaint and the cross-claim; and (3) the logical relationship between the original claim and the cross-claim.

 Returning to the case *sub judice,* we find that the circuit court prematurely found that W. Va.Code § 55–2–21 did not apply. Prior to such a determination, a proper analysis of Street's claims is required. If the claims arose out of the same transaction or occurrence as the original action, then they are properly classified as cross-claims such that the statute of limitations would be tolled pursuant to W. Va.Code § 55–2–21. The lower court stated that Street's claims were not cross-claims, but, rather, were independent causes of action. In light of the lower court's failure to analyze whether the claims arose from the same transaction or occurrence and, thus, constituted cross-claims or independent causes of action, this issue is reversed and remanded to provide the circuit court an opportunity to apply the test set forth in this Opinion.

### B. Application of the Discovery Rule

Street argues, alternatively, that the circuit court incorrectly denominated its claims against S&ME as an independent cause of action and applied the discovery rule to bar the same. In support of its argument, Street sets forth that it was injured when it incurred significant expenses and costs in an effort to repair the Shops A area. Street, as well as THD, had contacted S&ME to investigate and determine a resolution for the problem and Street had followed the recommendations contained in S&ME's report. The opinion of S&ME was that the damage had been caused by problems with the fill. As a general contractor, Street asserts that it could not have known that groundwater was the significant contributing cause of the settlement until the 2007 engineering report, which was the earliest date upon which the statute of limitations could begin to run.

In response, S&ME states that whether an entity knows of, or should know of, a cause of action is an objective test. Regardless of the actual problem causing ground settlement, S&ME urges that Street was aware that a problem existed as far back as 2003. According to S&ME, Street had a duty to investigate at the time that the problem was known; however, Street failed to perform its own investigation. Thus, S&ME contends that there is no material question of fact as to when Street knew there was a problem, and the summary judgment should be upheld.

 In Syllabus point 5 of *Dunn v. Rockwell,* 225 W.Va. 43, 689 S.E.2d 255 (2009), we held as follows:

A five-step analysis should be applied to determine whether a cause of action is time-barred. First, the court should identify the applicable statute of limitation for each cause of action. Second, the court (or, if questions of material fact exist, the jury) should identify when the requisite elements of the cause of action occurred. Third, the discovery rule should be applied to determine when the statute of limitation began to run by determining when the plaintiff knew, or by the exercise of reasonable diligence should have known, of the elements of a possible cause of action, as set forth in Syllabus Point 4 of *Gaither v. City Hosp., Inc.,* 199 W.Va. 706, 487 S.E.2d 901 (1997). Fourth, if the plaintiff is not entitled to the benefit of the discovery rule, then determine whether the defendant fraudulently concealed facts that prevented the plaintiff from discovering or pursuing the cause of action. Whenever a plaintiff is able to show that the defendant

fraudulently concealed facts which prevented the plaintiff from discovering or pursuing the potential cause of action, the statute of limitation is tolled. And fifth, the court or the jury should determine if the statute of limitation period was arrested by some other tolling doctrine. Only the first step is purely a question of law; the resolution of steps two through five will generally involve questions of material fact that will need to be resolved by the trier of fact.

We need not analyze all of the *Dunn* factors because there are clearly material issues of fact such that summary judgment was improper in the alleged independent cause of action. In so finding, we are mindful that "'[t]he circuit court's function at the summary judgment stage is not to weigh the evidence and determine the truth of the matter, but is to determine whether there is a genuine issue for trial.' Syllabus point 3, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994)." Syl. pt. 3, *Toth v. Bd. of Parks & Recreation Comm'rs*, 215 W.Va. 51, 593 S.E.2d 576 (2003). Further,

"[s]ummary judgment is appropriate where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove." Syllabus point 4, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994).

Syl. pt. 5, *Toth*, 215 W.Va. 51, 593 S.E.2d 576.

While the circuit court specifically found in its order that Street knew or should have known of the presence of groundwater and should have sought out answers starting in 2003, Street asserts that it had no way of knowing of the groundwater presence until 2007. Significantly, Street points out that it did take steps in 2003 to determine the cause of the problem. Those steps led Street to rely on the expertise of S&ME, who opined that the problem was related to fill placement. Street had no reason to doubt the accuracy of S&ME's conclusions until 2007. The engineer who issued the report in May 2007 testified that groundwater could have been addressed in the site construction method if it had been detected or known; that the groundwater contributed to the settlement and continued deterioration under Shops A; that the groundwater placed pressure upon and influenced the building movement; and that he could not find any prior soil borings or monitoring in the lower end of the development where Shops A is located.

Street disagrees with the circuit court's finding that Street received two reports in 2003 that should have alerted it to the groundwater issue. The reports received by Street may have observed the presence of groundwater; however, as asserted by Street, those reports indicated the settlement damage was caused by improper fill placement and never attributed such problems to the presence of groundwater. Street continues its argument by delineating that the connection between the groundwater and the settlement damage was not evident until the 2007 report by Mr. Cross. Further, there is a disagreement as to when the Shops A area became a part of the original action, as well as when it became a part of the purported cross-claims filed by Street against S&ME. These disputed facts are merely examples of the factual issues that should have been resolved by the trier of fact.

In summary, we agree with Street's argument that genuine issues of material fact exist so as to preclude summary judgment if its claim is an independent cause of action. This issue is reversed and remanded to the circuit court.

On remand, if the circuit court determines that Street's claims meet the test to be cross-claims, then W. Va. § 55–2–21 applies to toll the running of the statute of limitations. Should the circuit court determine that Street's claims were independent causes of actions rather than cross-claims, genuine issues of material fact exist such that a trier of fact should determine if and when the discovery rule should be applied.

## V.

## CONCLUSION

For the foregoing reasons, the orders of the Circuit Court of Cabell County are here-

by reversed and remanded, with instructions herein.

Reversed and Remanded.

Chief Justice WORKMAN and Justice KETCHUM concur in part, and dissent in part, and reserve the right to file separate opinions.

WORKMAN, Chief Justice, concurring, in part, and dissenting, in part:

I concur with the majority's holding that W. Va.Code § 55–2–21 (1981) (Repl.Vol.2008) tolls the statute of limitation during a pending civil action as to any cross-claim that has been or may be asserted therein. I also concur with the new syllabus point created by the majority in this case which sets forth the factors to be considered in determining whether a cross-claim arises out of the same transaction or occurrence as the original action. I dissent, however, to the majority's decision to remand this case to the circuit court to determine whether the claims asserted by J.A. Street & Associates, Inc., ("Street") in December 2009 constitute cross-claims or independent causes of action. I would have applied the new test created by the majority in Syllabus Point 9 and concluded that as a matter of law, the claims asserted by Street in December 2009 are in fact cross-claims.

Upon review of the record, it is clear that the amended cross-claims asserted by Street on December 8, 2009, arise out of the same transaction as the original action. The allegations in both the original action and the amended cross-claims stem from the construction of the Merritt Creek Farms Development and, in particular, from the preliminary geotechnical evaluation of the site that was prepared by S & ME, Inc. ("S & ME"). In that regard, the original action filed by Thundering Herd Development, L.L.C., ("THD") alleged that S & ME had negligently provided recommendations with respect to the site preparation for the Target store location as well as the remainder of the development resulting in unanticipated settling of the fill material on certain portions of the property. Likewise, Street's amended cross-claims alleged that S & ME negligently failed to perform a thorough, complete and competent geotechnical exploration and investigation of the construction site and that it negligently failed to discover the presence or effect of ground water resulting in the settling of the fill material at the Shops A site and causing Street to incur costs to repair the settlement damage.

Although this litigation was initiated in 2003, the plaintiff, THD, did not amend its complaint to assert a cause of action against Street until 2007. Until then, Street had no need or reason to initiate litigation of its own against S & ME. Given all the above, resolution of both the original action and the cross-claims will require consideration of the same facts and law. The same evidence will support or refute both the complaint and the cross-claims. Also, without question, there is a logical relationship between the original claim and the cross-claims.

Because the cross-claims asserted by Street clearly arise out the same transaction as the original action, there was no need for this Court to remand this case to the circuit court to make a determination on this issue. The circuit court's order granting S & ME's motion for partial summary judgment should have been reversed, and this case should have been remanded for further proceedings with a finding that the claims asserted by Street in December 2009 clearly are proper cross-claims that are not barred by the applicable statute of limitation pursuant to W. Va.Code § 55–2–21.

For the reasons set forth above, I concur, in part, and dissent, in part, to the majority's decision in this case. I am authorized to state that Justice Ketchum joins me in this separate opinion.