Lloyd Luther White *v.* Seymour Graham *et al.*

(No. 7245)

Submitted March 30, 1932.   Decided June 11, 1932.

*S. T. Spears* and *Wm. T. George,* for appellant.
*E. L. Maxwell,* for appellees.

Hatcher, President:

This suit was instituted by creditors of L. L. White to set aside his several deeds conveying real estate to his wife, Lulu, and to his father-in-law, Seymour Graham. White and Graham jointly borrowed money and paid off the creditors and then White asked for a reconveyance of the property to him on the ground that the deeds were secured through fraud and undue influence and upon the agreement that the property would be held in trust for him. From a decree in favor of White, cancelling the deeds and finding specifically that they were procured "by misrepresentation and fraud of Seymour Graham and Lulu White", Graham secured an appeal.

A number of errors were alleged in the petition for an appeal, but only three are urged in Graham's brief, viz: (1) an allegation by White that the deeds were executed to delay, etc., creditors; (2) the failure of the evidence of fraud and undue influence and of the trust agreement to be as clear and convincing as the law requires; and (3) that White does not come into equity with clean hands.

1. White does allege that he "now is advised" that the execution of the deeds was in pursuance of a plan of Graham and Mrs. White to defeat the creditors of both her and himself, but denies that he executed the deeds for that purpose. So we see nothing in that allegation to estop him.

2. Graham's brief contends that the consideration for the deeds—maintenance of White—was ample; that they were made voluntarily; that White's present position is supported only by "the loose expressions of various witnesses"; and that even White admits that neither Graham nor Mrs. White discussed with him "straight out" (whatever that means) the making of the deeds.

White was the devisee (at the age of eleven) of valuable property in the city of Elkins. He married in 1923, when he was seventeen, Lulu Graham then being nineteen. Shortly afterward, her father and mother and her brother and his wife moved in and settled down on White. For a number of years following White was extravagant and intemperate, and the records of the local police and justice of the peace show that both he and his wife were at times mutually turbulent and separately licentious. The deeds complained of are three, all made in 1928. One was direct to Graham, one direct to Mrs. White, and then a joint conveyance to Graham by her and White of the property deeded her. The value of the entire property was in the neighborhood of $100,000.00 when the deeds were made. Both the deed to Graham and the deed to Mrs. White called for the maintenance of White as the only consideration. In joining with Mrs. White in her conveyance to Graham, White released that property from his right of maintenance. The requirement of maintenance was included in the deeds from White at the suggestion of the attorney who prepared them. The release

of maintenance was included in the deed from Mrs. White to Graham at the direction of Graham.

White procured a divorce in 1929 on the charge of adultery, Mrs. White making no defense. He now admits he was then a promiscuous adulterer himself, and that he falsified as to his conduct. His witnesses in that case now admit they committed perjury then. Several witnesses against White admit perjury in the instant suit. Therefore we shall not even attempt to determine on which side is the weight of evidence.

Graham was an evasive witness. He is shown to be impecunious and financially irresponsible. He has never supported White; and he has not kept the taxes paid on the property. There is no equity whatsoever in his favor. He says at one place he knew nothing of the deeds until they were made. C. D. Smith, an attorney of high repute who prepared the deeds, testifies that Graham was the first one who approached him about them, and that he prepared the deed from Mrs. White to Graham as Graham's counsel. Smith further said, "There seemed to be a thorough understanding between Mr. White and Mr. Graham." At another place Graham says that White made the conveyances to baffle his creditors. That statement is hardly tenable either, as White had sold some property just before the conveyances to Graham and Mrs. White for $6,000.00, out of which he had paid off all of his personal indebtedness except a few hundred dollars. So we do not wonder that the circuit court refused to credit Graham's testimony.

White testified that except for a row shortly after Graham came to his home he and Graham got along well; that Graham gave him good advice about his misconduct and won his confidence; that Graham represented to him he was likely to get into trouble and lose his property through his intemperance, and advised that the property be put in his (Graham's) name "to save it", and that the property would be reconveyed on request. White is substantially confirmed by Smith, who says, I * * * did understand that Mr. Graham was assuming a protectorship as a sort of guardian and advisor to Mr. White over his property." Smith also said that his

conversations were principally with Graham, that it was from Graham he derived his understanding as to the property, and that White "didn't seem to understand or grasp what was going on." The evidence of White reveals a sordid life of prodigality, but he did not spare himself in any particular. Like that other prodigal he seems to have *come to himself* now, which is more than can be said of some of his former associates. Having in mind his apparent sincerity now, and the history of the parties as shown by the record, we cannot say the circuit court was wrong in regarding his evidence favorably and as of sufficient clarity to call for a reconveyance of his property.

Counsel point to the fact that White did not testify of a promise from his wife to reconvey the property he conveyed to her. As that property was later conveyed to Graham, the deed to Mrs. White loses significance except as part of the general scheme to get all of White's real estate into the hands of Graham.

3. Counsel say that White does not come into this suit with clean hands because of his conduct in the divorce suit. The unclean hands rule applies only to the very transaction in litigation. Consequently, it cannot be invoked here. *Bias* v. *Bias,* 109 W. Va. 621, 155 S. E. 898. (Incidentally, because of White's misconduct in the divorce suit, the circuit court in the instant suit impressed the property with a lien for the support of Mrs. White.)

The decree is accordingly affirmed.

*Affirmed.*