HENRIETTE H. SHEARER, *et al.*

*v.*

UNITED CARBON COMPANY

(No. 10894)

Submitted January 15, 1958. Decided April 11, 1958.

*Blagg, Stone, Mauzy, Anderson & Bowles,* for appellant.

*James F. Brown, III, Jackson, Kelly, Holt & O'Farrell, Savage, Goshorn, MacCorkle & Rippetoe,* for appellees.

BROWNING, JUDGE:

Plaintiffs, the owners of land leased for oil and gas purposes by their predecessors in title, brought this suit in equity against defendants, United Carbon Company, a corporation, and Seatex Oil Company, Inc., a corporation, praying for a forfeiture of the leases and assignments by which the defendant Seatex Oil Company, Inc., acquired its rights, and for an accounting and decretal judgment, against both defendants, of moneys due to the plaintiffs as royalties for the period November 1, 1946 to and including April 30, 1950.

Seatex Oil Company, Inc., never appeared in the proceeding, so the word "defendant", where it hereinafter appears without further description, will refer solely to the United Carbon Company.

The original and amended bills allege the original leasing of the property in question for oil and gas purposes by three separate leases, covering one tract of 163 acres, one of 450 acres and one of 387 acres, in January, 1912, such leases providing for a gas royalty of one and one-half cents per MCF for all gas which the wells were shown to be capable of producing for twenty-four hours. These leases were subsequently modified in June, 1912, to provide for a royalty of one and one-half cents per MCF on the gas actually marketed. By mesne conveyances and assignments, the rights of the lessee under these leases were acquired by Marshall and Price. The bill then alleges that in 1931, plaintiffs' predecessors in title brought two suits in equity against Marshall and Price seeking a forfeiture of the leases, and an accounting. On October 22, 1935, the Court of Common Pleas of Kanawha County entered an order dismissing those suits as settled and compromised, pursuant to an unsigned but written agreement between the parties dated July _____, 1932, a copy of such agreement being filed with the order of dismissal. This agreement provided that from and after July 1, 1932, lessors should receive as royalties one-eighth of whatever amounts should be realized from the sale of gas produced from the premises, and required lessees to promptly and diligently drill. The bill then alleges that on April 20, 1936, Marshall and Price purportedly subleased the "deep sand rights" in the property to defendant providing: " (2) With respect to gas to pay to Lessors such gas rentals or royalties as Lessors may be chargeable with under the terms of the leases under which Lessors title is derived * * *.", and further providing for an overriding royalty to sublessors. By mesne assignments, the rights of Marshall and Price were subsequently acquired by the defendant, Seatex Oil Company, Inc. On February 3, 1945, plaintiffs, or their pre-

decessors, executed a new lease, covering the 163 acre tract, with defendant, this lease providing for a one-eighth royalty based upon a wholesale market value at the well of twelve cents per MCF. A supplemental agreement, on the same date, between the parties provided for a fixed overriding royalty of one and one-half cents per MCF "* * * not to increase on a sliding scale as to price per thousand cubic feet even though the gas royalty in said lease does so increase in price per thousand cubic feet above the minimum gas royalty price provided therein." The bill further alleges that: No drilling operations were commenced under the purported sublease until the latter half of the year 1945 when at least four wells were drilled on the 450 acre and 387 acre tracts; gas was produced from such wells beginning in November, 1945; sometime in January, 1946, at which time gas was selling for 12¢ per MCF, defendant, by virtue of an express agreement, began paying royalties direct to plaintiffs; and that, while said leases were under control of the defendant, during the period November, 1946 to April, 1950, the price of gas sold and marketed from the premises was increased three cents (.03¢) per MCF by private gas purchase agreement of which plaintiffs had no knowledge and for which defendants did not remit to plaintiffs their ⅛ share, but continued to remit as royalty only ⅛ of 12¢ per MCF. The bill then concludes with the prayer heretofore mentioned. All of the mentioned leases and agreements were filed as exhibits to the original and amended bills. All leases were properly recorded, with the exception of the modification agreement of July ____, 1932.

Defendant filed its answer and amended answer by which it admits most of the averments in the original and amended bill of complaint. However, it denies any knowledge of the suits between plaintiffs' predecessors and Marshall and Price, or of the modification agreement pursuant to which those suits were compromised and dismissed, until December 5, 1944, previous to any drilling operations, but approximately nine years after it had purchased the "deep sand rights" from Marshall and Price

for a valuable consideration, and for which period it had continuously paid delay rentals to the proper parties.

Plaintiffs demurred to defendant's answer and amended answer on the grounds that: (1) The modification agreement was not such an instrument which need be recorded under the recording statutes in order to be legally binding on defendant; (2) if the recording statutes are applicable, defendant is not a bona fide purchaser for value without notice within the legal meaning of the term; (3) it is immaterial whether defendant had actual notice of the modification agreement of 1932, or the terms thereof, since defendant was obligated by the sublease of 1936 "to pay to (sub) lessors such gas rentals or royalties as (sub) lessors may be chargeable with under the terms of the leases under which (sub) lessors' title is derived."; and (4) it is immaterial whether plaintiffs had knowledge that all leases had been recorded, they being under no legal obligation to record the same, nor were they under any legal obligation to record the modification agreement.

The demurrer to defendant's answer and amended answer was sustained, proof was taken as to the additional royalty due, and a decretal judgment in the amount of $18,005.55 entered in favor of plaintiffs and against the defendants.

Errors assigned in this Court are the action of the trial court in: (1) Sustaining the demurrer to the answer; (2) declining to admit proof in support of the answer; (3) in entering a decree in the amount of $18,005.55; and (4) other errors apparent on the face of the record.

The interest which a lessee secures by an oil and gas lease under the later decisions of this Court is an inchoate and contingent interest. It creates in the lessee a vested right to produce the minerals pursuant to the terms of the lease after discovery thereof. *Headley* v. *Hoopengarner,* 60 W. Va. 626, 55 S. E. 744.

Prior to 1935, and under the parent lease, the lessee had discovered gas in one stratum of the land in question,

and was producing and had produced gas therefrom, but no discovery of gas had been made in the lower strata. The trial court found that the agreement between the lessee and the defendant was a sublease rather than an assignment. The instrument has some aspects of both, but the trial court, for the following reasons, found it to be a sublease: "(1) The agreement in effect is designated a sublease by the language employed therein. This fact is persuasive, but not controlling; (2) The agreement does not purport to grant to United Carbon Company the vested right to remove oil and gas which had accrued to the sublessors by reason of their previous development; (3) The sublessors reserve an overriding royalty. This is indicative of a sublease, but this fact alone would not be controlling; (4) The provision for delay rentals; (5) The right of the United Carbon at its election to surrender its lease to Marshall, et al. upon the payment of $1.00; (6) The provision that the sublessees will be bound by existing contracts for the sale of gas; and (7) The reversionary rights remaining in the sublessors. McNamer Realty Co. v. Sunburst Oil & Gas Co., (Mont.) 247 Pac. 166. The sublease provides that before the sublessors may surrender the original leases in question, thirty days notice thereof must be given to the sublessee. The agreement further provides that in the event a request is made in writing within said thirty day period the sublessors will assign to the sublessee free of cost their leasehold right in the lands affected so that the sublessee, if it so desires, may be substituted to the rights of the sublessors therein." In addition to these reasons, it may also be noted that lessors expressly waived their right to hold, during or after the term, any of the property placed upon the premises by the lessees as fixtures. We agree that the instrument in question is a sublease.

The instrument being a sublease, there was neither privity of contract nor privity of estate existing between the plaintiffs and the defendant. Therefore, this suit could not be maintained unless the language used in the sublease is such that it may be construed as an agreement

by the defendant to assume payment of gas royalties due the plaintiffs by the lessee under the parent lease. This is the pertinent language: "* * * to pay to Lessors such gas rentals or royalties as Lessors may be chargeable with under the terms of the leases under which Lessors' title is derived, which rentals or royalties Lessors shall pass on to their lessors; and in addition thereto to pay to Lessors a royalty of one thirty-second (1/32nd) of the fair market value, at the well, of all gas produced and sold by Lessee from said premises." The rule is stated in 51 C. J. S., Landlord and Tenant, Sec. 48a (2), Page 581: "* * * where the sublessee has agreed with the lessee to assume the obligations of the parent lease, the lessor has a right of action as a 'creditor beneficiary' against the sublessee for a breach thereof even though he is not a party to the contract of assumption."

Subsequent to the date when defendant became aware of the 1932 modification agreement, it entered into a new lease with plaintiffs as to one of the original tracts, and on February 3, 1945, in an indemnifying agreement of even date with the new lease, used the following language relative to its obligations under the 1936 sublease with the original lessees: "WHEREAS, Robert A. Marshall, et als., by agreement dated April 20, 1936, purported to make a sublease to United Carbon Company, a Delaware corporation, of 'only such rights' as sublessors have by virtue of various deeds and *agreements* under and through which their title is derived, on the formations below the Berea on five different parcels aggregating 1800 acres * * *, under which sublease the sublessee, United Carbon Company, was to *pay the rentals and royalties to sublessor to be 'passed on' to their lessors as the sublessors might be chargeable with; * * *.*" (Italics supplied.) This practical construction of the 1936 agreement by the defendant is confirmation that the original language used was intended to be an assumption of responsibility to pay the royalties due plaintiffs from Marshall and Price. Furthermore, it may be noted that the compromise agreement of 1932, filed with the decree of

October, 1935, saved the rights of the lessees under the leases of 1912, through whom the defendant's rights are derived, from threatened forfeiture. While not appropriate to the decision herein, defendants might then be placed in the anomalous position of denying they are bound by the very instrument by which their title was confirmed.

In *Hartmann v. The Windsor Hotel Co., et al.*, 132 W. Va. 307, 52 S. E. 2d. 48, the first syllabus point states that: "A person for whom compensation for services is provided under a contract made by others, to which contract he was not a party, is a creditor beneficiary thereunder, and may, in a suit in equity, recover under the same, even though such contract was not made for his sole benfit." Thus the plaintiffs may maintain this suit in equity as third party beneficiaries of a contract for their benefit without regard to the recording statutes, or any other issue that is presented by this record.

Therefore, it is unnecessary to discuss other questions raised by this record. Anything that might be said in this opinion regarding them would be dicta. Apparently, this Court has not passed on some of them. In the belief that the stating of them may serve a useful purpose, they are: (1) Does the rule applicable to sublessees of surface structures apply to sublessees under an oil and gas lease?; (2) Do the recording statutes of this State, Code, 40-1-8, and Code, 40-1-9, protect a sublessee against an unrecorded agreement, modifying the royalty, between an oil and gas lessor and lessee in the absence of fraud or misrepresentation?; (3) Is such a sublessee a purchaser for value without notice within the meaning of the recording statutes and entitled to the same protection as an assignee or a partial assignee may be?; (4) Is a grantor or lessor under the affirmative duty to have a deed or lease recorded, or is that the sole responsibility of the grantee or lessee?; and (5) Does the entry of a decree or judgment, not for money, affecting an estate in real property entered by a court of record in a county where the affected

property lies, serve as notice to "creditors" or "purchasers for value", though not of record in the office of the Clerk of the County Court?

The action of the Circuit Court of Kanawha County in sustaining the demurrer of plaintiffs to defendant's answer, and entering a decretal judgment against the defendant in the sum of $18,005.55, is affirmed.

*Affirmed.*

GIVEN, JUDGE, dissenting:

The controlling facts in this case are plain. They are not in dispute. Certain oil and gas leases, in the usual form, granting unto lessees the right to remove minerals, were executed and recorded in the proper office. By certain writings these leases were transferred to Marshall and Price, who transferred, assigned or subleased certain rights, including the right to remove minerals, from the lower strata, to the defendant, United Carbon Company. Prior to the transfer, assignment or sublease to the defendant, the original lessors and those having acquired title through the original lessees, entered into a written contract whereby a change in the quantum of royalty to be paid was effected. Other changes were also effected. The last mentioned contract was not recorded, in fact, was not in form a recordable instrument. The defendant was not a party to such agreement, had no notice thereof, or of any fact putting it on inquiry. It paid a substantial cash price for the property or rights acquired. Yet defendant is held liable for royalties for minerals produced in excess of royalties provided for in the recorded leases.

Insofar as pertinent, the applicable statutes, Code, 40-1-8, 9, provide: "Any contract in writing made in respect to real estate or goods * * * or any contract in writing made for the conveyance or sale of real estate, or any interest or term therein of more than five years, or any other interest or term * * * under which the whole or any part of the corpus of the estate may be taken, destroyed * * * shall, from the time it is duly admitted to record,

be, as against creditors and purchasers, as valid as if the contract were a deed * * * [but] Every such contract * * * shall be void as to creditors and subsequent purchasers for valuable consideration without notice, until and except from the time that it is duly admitted to record * * *".

It is significant, I think, that the statutory provisions relate to "any contract" executed "in respect to real estate", or any contract "under which the whole or any part of the corpus of the estate may be taken". The application of the statute clearly is not made to depend on whether "any contract" amounts to an assignment, a sublease or a contract creating a "creditor beneficiary" relationship, but only whether it is made "in respect to real estate", including any contract whereby "the whole or any part of the corpus may be taken".

In my view, there is not the least doubt that the unrecorded contract, under which recovery is permitted, was one "in respect to real estate". I need cite no authority for the proposition that minerals in place constitute real estate. Even if such view is not warranted, there can not be the least doubt that the contract was one "under which the whole or any part of the corpus of the estate" could be taken. Clearly, therefore, the unrecorded contract was one relating to a transaction within contemplation of the recording statutes. Just as clearly, the statutes declare such contract "shall be void" as to "subsequent purchasers for valuable consideration without notice". It is on such a void contract that recovery is permitted. Does not such a holding render our recording statutes nugatory and useless as to such contracts? Can purchasers of oil and gas, or other leases, hereafter rely on our public records, or must they rely on open inquiry, for ascertainment of title of lessors, lessees, or those claiming under them?

Being of the views indicated, I respectfully dissent. I am authorized to say that Judge Riley concurs in the views expressed in this dissent.