IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2020 Term

_____

No. 18-0847

_____

FILED
**June 8, 2020**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

U.S. EXPLORATION, LLC, and HARRY SLACK, individually,
Defendants, Below, Petitioners

v.

GRIFFIN PRODUCING COMPANY,
Plaintiff Below, Respondent

_____

Appeal from the Circuit Court of Ritchie County, West Virginia
The Honorable Timothy L. Sweeney, Judge
Civil Action Nos. 14-C-38 & 39

AFFIRMED
_____

Submitted: January 28, 2020
Filed: June 8, 2020

Edmund L. Wagoner, Esq.                     Rodney C. Windom, Esq.
David E. Goddard, Esq.                      Scott A. Windom, Esq.
Goddard & Wagoner PLLC                      Windom Law Offices, PLLC
Clarksburg, WV 26301                        Harrisville, WV 26362
Counsel for Petitioners                     Counsel for Respondent

JUSTICE WORKMAN delivered the Opinion of the Court.

**SYLLABUS BY THE COURT**

1. "'A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law.' Syllabus point 3, *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York*, 148 W. Va. 160, 133 S.E.2d 770 (1963)." Syl. Pt. 1, *M.M. ex rel. Jeanette M. v. Pfizer, Inc.*, 239 W. Va. 876, 806 S.E.2d 800 (2017).

2. "A circuit court's entry of summary judgment is reviewed *de novo.*" Syl. Pt. 1, *Painter v. Peavy,* 192 W.Va. 189, 451 S.E.2d 755 (1994).

3. "Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syl. Pt. 1, *Chrystal R.M. v. Charlie A.L.,* 194 W.Va. 138, 459 S.E.2d 415 (1995)."

4. "When a party to a divorce case undertakes – before the final order of equitable distribution in the case is effective – to transfer real property to a third party having actual knowledge of the divorce proceedings, the transfer is effective only to the extent it does not conflict with the equitable distribution order unless the other party to the divorce joins in the transfer. To the extent the attempted transfer conflicts with the order

of equitable distribution and there is evidence that the transfer was made to avoid application of the equitable distribution statutes or was otherwise a fraudulent conveyance, it is void." Syl. Pt. 7, *Whiteside v. Whiteside*, 222 W. Va. 177, 663 S.E.2d 631 (2008).

5. "'In equity, the bar of the unclean hands rule is raised only because of conduct connected with the particular transaction from which relief is sought.' *Bias v. Bias*, 109 W. Va. 621, 155 S.E. 898 [1930]." Syl. Pt. 1, *White v. Graham*, 112 W. Va. 451, 164 S.E. 664 (1932).

**WORKMAN, Justice:**

This is an appeal from the Circuit Court of Ritchie County, West Virginia, which granted the motion of plaintiff/respondent Griffin Producing Company ("Griffin") for partial summary judgment in a dispute concerning ownership of certain oil and gas leases and royalty interests. The court concluded that an unrecorded assignment of leasehold interests to defendant/petitioner U.S. Exploration, LLC ("U.S. Exploration") did not defeat a subsequent modification and surrender of those same interests to Griffin. Subsequent to the court's ruling, Griffin voluntarily dismissed its remaining claims, without prejudice, leading to the court's issuance of a final order. This appeal followed.

Based upon our careful review of the appendix record, the parties' briefs and oral arguments, and the applicable law, we affirm the judgment of the court below.

## I. FACTS AND PROCEDURAL BACKGROUND

Griffin is, and at all times relevant hereto has been, the owner of the oil, gas and minerals within and underlying approximately four thousand contiguous acres situated in the Grant District of Ritchie County, West Virginia.[1]  The acreage is divided into forty separate tracts that are commonly referred to as the Kennedy Tracts.  Some of the Kennedy

---

[1] It is undisputed that this acreage was originally conveyed to Griffin by deeds dated December 31, 1915, of record in the Office of the Clerk of the County Commission.

1

Tracts are leased for development of oil and gas, including the tracts at issue in this litigation, approximately thirty in number, which were leased to Magnum Oil Corporation ("Magnum").[2]  Additionally, Magnum held overriding royalty interests in various depths on some or all of its leased tracts.

During the relevant time period of this case, defendant/petitioner Harry Slack ("Mr. Slack") was the vice-president of Magnum and his then-wife, Kathleen Fitzpatrick ("Ms. Fitzpatrick"), was the entity's president.  We are told that whether Magnum was marital property or was the separate property of Ms. Fitzpatrick was a hotly-contested issue in divorce proceedings in Vermont and North Carolina; however, because no documentation of the divorce proceedings was included in the appendix record for review by this Court, we express no opinion as to this issue and our decision herein does not rest in any way upon its resolution.

Also during the relevant time period of this case, Mr. Slack owned his own oil and gas company, petitioner U.S. Exploration.  Of significance to this case, U.S. Exploration did not own any interests in the leasehold estates for any of the Kennedy Tracts

---

[2] Magnum was a named plaintiff in the proceedings below, but was not a party to Griffin's motion for partial summary judgment and is not a party to this appeal.

2

prior to December 12, 2012, on which date an entity designated as Magnum Oil *Company*,[3]

acting through its vice president, Mr. Slack, assigned all of its right, title and interest in the

subject leasehold estates and overriding royalties to U.S. Exploration. This *Oil and Gas*

*Lease and Overriding Royalty Assignment* (hereinafter "the Assignment") provided, in

relevant part, that:

> This ASSIGNMENT and BILL OF SALE made and entered into as of this date of December 28, 2012 by and between Magnum oil [sic] Company being the ASSIGNOR and US Exploration LLC being the ASSIGNEE.
>
> WITNESSETH.
>
> The ASSOGNOR [sic], does, for and in consideration of one dollar, ($1.00), and other valuable consideration . . . hereby grant, bargain, assign, sell, transfer and set over unto the said ASSIGNEE, subject to any previous reservations and/or any reservation's [sic] herein, without warranty, all of the ASSIGNORS (sic) right title and interest in and to the oil and gas wells, leases, overriding royalties and rights of ways.

---

[3] Respondent points out that Magnum Oil Company, as opposed to Magnum Oil Corporation, is not a licensed business entity in West Virginia and did not own any leasehold interests in the Kennedy Tracts. In their brief, petitioners simply ignore the fact that Magnum Oil Company was not the actual owner of the leasehold rights and therefore could not assign them; and in its brief, respondent Griffin fails to make a cross assignment of error, or indeed to make any legal argument, on this point, simply adding quotation marks and emphasis to any mention of "Magnum Oil *Company.*" Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure requires that

> [a] brief must contain an argument exhibiting clearly the points of fact and law presented, the standard of review applicable, and citing the authorities relied on . . . [and] must contain appropriate and specific citations to the record on appeal[.] The Court may disregard errors that are not adequately supported by specific references to the record on appeal.

Accordingly, we deem any argument concerning the validity of a document executed by Magnum Oil *Company* to have been waived by respondent.

3

Better known as the Griffin producing [sic] the Kennedy tracts
1 through 40 each containing 100 acres in Grant district . . .

According to Mr. Slack's deposition testimony, the Assignment was given for the express purpose of "protect[ing] the leasehold estate . . . [f]rom [Ms. Fitzpatrick] giving it away to somebody else, third party, to get the money on the backside."  U.S. Exploration did not record the assignment until July 15, 2014, nearly nineteen months later, as Mr. Slack was keeping its existence a secret for use as a possible "nuclear option" in the divorce proceedings.

On July 12, 2013, after Magnum Oil Company had assigned the leaseholds to U.S. Exploration but before U.S. Exploration had recorded the Assignment, Magnum Oil Corporation, acting through its president, Ms. Fitzpatrick, surrendered its right to produce and market oil and gas from the subject leasehold estates, as well as its overriding royalty interests, to Griffin.  The two documents evidencing the transaction, a *Modification and Partial Surrender of Overriding Royalty* and a *Surrender of Oil and Gas Lease*, were recorded on August 20, 2013.  The *Modification and Partial Surrender of Overriding Royalty* (hereinafter "the Modification") provided, in relevant part, that:

> THIS MODIFICATION OF OVERRIDING ROYALTY, made this 12th day of July, 2013, by and between MAGNUM OIL CORPORATION, PARTY OF THE FIRST PART, and GRIFFIN PRODUCING COMPANY, PARTY OF THE SECOND PART.
>
> WHEREAS the Party of the First Part is the owner of a 3.25% overriding royalty interest in those certain tracts of real estate being situate on the waters of Buky Run and Goose

4

Creek in Grant District, Ritchie County, West Virginia, and designated as Kennedy Tracts No. 1 through 40 . . . .

WHEREAS the parties herein desire to modify that particular overriding royalty interest only insofar as it pertains to all formations from the top of the Rhinestreet Formation to the base of the Marcellus Shale.

THEREFORE WITNESSETH: That the Party of the First Part, in consideration of the sum of One Dollar, and other valuable consideration . . . does hereby MODIFY the overriding royalty interest for all oil, gas or other constituents produced, saved or sold from all formations and strata from the top of the Rhinestreet Formation to the base of the Marcellus Shale. That the Party of the First Part, hereby SURRENDERS the overriding royalty for the same.

This Modification does not apply to the production from existing wells on the subject Kennedy Tracts and does not apply to any future production from any formations or strata above the Rhinestreet Formation or below the Marcellus Formation.

The *Partial Surrender of Oil and Gas Lease* (hereinafter "the Surrender")

provided, in relevant part, that

THIS DEED OF SURRENDER OF OIL AND GAS LEASE, made this 12th day of July, 2013, by MAGNUM OIL CORPORATION, PARTY OF THE FIRST PART, and, GRIFFIN PRODUCING COMPANY, PARTY OF THE SECOND PART.

WITNESSETH: That the Party of the First Part, in consideration of the sum of One Dollar, and other valuable consideration . . . does hereby fully surrender and release unto the Party of the Second Part all right title and interest to produce and market oil and gas and their constituents from that certain tract of real estate being situate on the waters of Buky Run and Goose Creek in Grant District, Ritchie County, West Virginia, and described as follows:

5

Kennedy tracts No. 1 through 40 each containing approximately 100 acres, in Grant District . . . .

It is undisputed that prior to August 20, 2013, neither U.S. Exploration nor Mr. Slack had ever informed Ms. Fitzpatrick of the existence of the earlier, unrecorded, Assignment.[4]  They claim, however, that Griffin was on constructive notice based on an incident that occurred during one of the Slack/Fitzpatrick divorce hearings in Vermont (or, more likely, outside in the hall).  A gentleman named Jim Eliopulos, who was a friend of Ms. Fitzpatrick and had some sort of professional relationship with Griffin,[5] was at the hearing.  At some point that day, Mr. Slack told Mr. Eliopulos that "he, and by extension Magnum, would never agree to sell the Kennedy Lease to him or to Griffin."

On September 10, 2014, Griffin and Magnum filed a "Complaint for Declaratory Relief" against U.S. Exploration and Mr. Slack, seeking an order "setting forth the leasehold ownership interests and rights of the respective parties." The complaint contained further allegations made against Mr. Slack, personally, that he had "fraudulently attempted to cloud Plaintiffs' respective titles."  On September 22, 2017, the circuit court

---

[4] In Mr. Slack's deposition, he conceded that although he intimated to Ms. Fitzpatrick during the couple's divorce proceedings that he had some sort of "nuclear option" available, he does not know when she learned of the existence of the Assignment and did not give her a copy of the document until after it had been recorded.

[5] Petitioners allege that Mr. Eliopulous was a realtor and "agent for Griffin" who served as Griffin's corporate representative at the parties' unsuccessful mediation of this case.

6

entered an order granting Griffin's motion for partial summary judgment, concluding as a matter of law that Magnum's Modification and Surrender "were not 'conveyances' or 'sales of interests in real estate' and therefore are not subject to the requirements of the recording statutes, West Virginia Code § 40-1-8 and 40-1-9." Subsequently, Griffin voluntarily dismissed its fraud claims, without prejudice, whereupon the circuit court entered a final order affirming and incorporating the terms of its initial order. This appeal followed.

## II. STANDARD OF REVIEW

This case is before us on review of the circuit court's entry of summary judgment in favor of the plaintiff/respondent. In that regard, we have held that "'[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law.' Syllabus point 3, *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York*, 148 W. Va. 160, 133 S.E.2d 770 (1963)." Syl. Pt. 1, *M.M. ex rel. Jeanette M. v. Pfizer, Inc.*, 239 W. Va. 876, 806 S.E.2d 800 (2017).

On appeal, "'[a] circuit court's entry of summary judgment is reviewed *de novo.*' Syllabus point 1, *Painter v. Peavy,* 192 W.Va. 189, 451 S.E.2d 755 (1994)." *J.A. St. & Assocs., Inc. v. Thundering Herd Dev., LLC*, 228 W. Va. 695, 697, 724 S.E.2d 299,

301 (2011).  An additional principle of review applies where, as here, the summary judgment under review is based upon the interpretation of a statute:

> ""'"Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review.' Syllabus point 1, *Chrystal R.M. v. Charlie A.L.,* 194 W.Va. 138, 459 S.E.2d 415 (1995)." Syllabus point 3, *Alden v. Harpers Ferry Police Civil Service Commission,* 209 W.Va. 83, 543 S.E.2d 364 (2001).' Syllabus point 1, *State v. Brandon B.,* 218 W.Va. 324, 624 S.E.2d 761 (2005)."

*Id.* at 697, 724 S.E.2d at 301.

### III. DISCUSSION

In the proceedings below, respondent Griffin contended, and petitioners U.S. Exploration and Slack agreed, that the resolution of this case was governed by application of West Virginia Code § 40-1-9.[6]  Accordingly, in support of its motion for partial summary judgment, Griffin made a straightforward statutory argument: that since the Modification

---

[6] West Virginia Code § 40-1-9 provides that:

> Every such contract, every deed conveying any such estate or term, and every deed of gift, or deed of trust or memorandum of deed of trust pursuant to section two, article one, chapter thirty-eight of this code, or mortgage, conveying real estate shall be void, as to creditors, and subsequent purchasers for valuable consideration without notice, until and except from the time that it is duly admitted to record in the county wherein the property embraced in such contract, deed, deed of trust or memorandum of deed of trust or mortgage may be.

8

and Surrender from Magnum to Griffin were recorded some eleven months prior to recordation of U.S. Exploration's Assignment, Griffin's rights were valid "as to creditors, and subsequent purchasers," including U.S. Exploration. In opposition to the motion, U.S. Exploration and Mr. Slack claimed that prior to Griffin's recordation of the Modification and Surrender, it was on notice, through its agent Mr. Eliopulous, of U.S. Exploration's earlier (although unrecorded) Assignment. Further, U.S. Exploration and Mr. Slack claimed that the amount Griffin paid for the modification and surrender of Magnum's leasehold and overriding royalty interests was far below what Mr. Slack contended to be their fair market value, and therefore Griffin was not a purchaser in good faith.

The circuit court did not accept the parties' assessment that the case was controlled by West Virginia Code § 40-1-9. Rather, the court concluded that Griffin's Modification and Surrender were not "conveyances" or "sales of interests" in real estate, and thus were not subject to the recording requirements of § 40-1-9. Therefore, the court reasoned, "the prior assignments and surrenders from Magnum Oil Corporation to Griffin Producing Company were valid documents that transferred title in the subject overriding royalty interests and surrendered the subject leasehold estates as of the time of their recording on August 20, 2013." The court further concluded that "[t]here was no constructive notice of U.S. Exploration's assignment when Griffin Producing Company acquired its rights in the subject leasehold and overriding royalties insofar as the U.S. Exploration assignment was not of record."

9

Initially, we conclude that the court's ruling that the Modification and Surrender were not "conveyances" or "sales of interest in real estate" and thus were not subject to the recording statute, West Virginia Code § 40-1-9, is immaterial to the resolution of this case, since the documents *were in fact recorded*. Thus, there are only three issues to be resolved in determining whether Griffin's Modification and Surrender were valid as against U.S. Exploration's Assignment: first, was Griffin on notice of the earlier, but unrecorded, Assignment; second, if so, was Griffin a bona fide purchaser of the leasehold and royalty interests; and third, were U.S. Exploration and Slack "ambushed" at the summary judgment hearing and deprived of an opportunity to present additional evidence in support of their defenses.

**Was Griffin on Notice of U.S. Exploration's Assignment**

As noted, the circuit court found that Griffin did not have *constructive* notice of the U.S. Exploration Assignment. We agree with the court's conclusion. In *In re Williams*, 213 W. Va. 780, 584 S.E.2d 922 (2003), we defined constructive notice as:

> [s]uch notice as is implied or imputed by law, usually on the basis that the information is a part of a public record or file, as in the case of notice of documents which have been recorded in the appropriate registry of deeds or probate. Notice with which a person is charged by reason of the notorious nature of the thing to be noticed, as contrasted with actual notice of such thing. That which the law regards as sufficient to give notice and is regarded as a substitute for actual notice. John W. Fisher, II, *The Scope of Title Examination in West Virginia: Can Reasonable Minds Differ?*, 98 W.Va. L.Rev. 449, 500 (1996).

213 W. Va. at 784, 584 S.E.2d at 926; *see also Alexander v. Andrews*, 135 W. Va. 403, 408, 64 S.E.2d 487, 490 (1951) ("if the former deed had been recorded prior to the May 14, 1946 deed, the question of actual notice would not be involved, because the recordation furnished what is termed constructive notice thereof."); *Williams*, 213 W. Va. at 786, 584 S.E.2d at 928 ("If neither improper benefit [to the notary public] nor any harm [to the parties] flowed from the transaction, then the imperfectly acknowledged [but recorded] deed of trust provides constructive notice under West Virginia law for the purpose of discerning priority in a bankruptcy action."). In the instant case, there is no dispute that U.S. Exploration's Assignment, although first in time to be executed, had not yet been recorded at the time Griffin's Modification and Surrender were executed and recorded. Thus, as a matter of law, Griffin had no constructive notice of the Assignment.

Notwithstanding this inescapable conclusion, however, U.S. Exploration and Slack nonetheless claim that Griffin had *actual* notice. In this regard, "[a]ll of the cases bearing upon the subject of notice hold that a showing of [actual] notice is made where a person is charged with facts and circumstances which require him to make inquiry as to matters of which notice or lack of notice is required." *Alexander v. Andrews*, 135 W. Va. 403, 412, 64 S.E.2d 487, 492 (1951). As we have more recently summarized our case law on this point:

> In general a party without *actual* notice may rely upon record
> titles in the office of the clerk of the county commission of the

11

county in which the land is located. W. Va.Code, 40-1-9 [1963]. Nonetheless, when a prospective buyer has reasonable grounds to believe that property may have been conveyed in an instrument not of record, he is obliged to use reasonable diligence to determine whether such previous conveyance exists. *Bailey v. Banther,* 173 W. Va. 220, 314 S.E.2d 176 (1983); *United Fuel Gas Co. v. Morley Oil & Gas Co.,* 101 W.Va. 83, 131 S.E. 716 (1926); *Lenhart v. Zents,* 50 W.Va. 86, 40 S.E. 444 (1901).

*Eagle Gas Co. v. Doran & Assocs., Inc.*, 182 W. Va. 194, 197-98, 387 S.E.2d 99, 102-03 (1989).

In short, where a document is not recorded, and even in situations where it is not required to be recorded,[7] the question still arises as to whether its existence defeats the rights of a subsequent bona fide purchaser or assignee without notice. *See, e.g.*, *State ex rel. U.S. Bank Nat'l Ass'n v. McGraw*, 234 W. Va. 687, 769 S.E.2d 476 (2015). In *U.S. Bank*, this Court was called upon to determine whether an assignment of a trust deed or mortgage, securing payment of a promissory note, was required to be recorded pursuant to § 40-1-9. We held that the assignment was not required to be recorded, but cautioned that "[t]he failure to record the assignment, however, affords no protection to the assignee with regard to other creditors or *bona fide* purchasers of the real estate for value, without notice of the unrecorded assignment." 234 W. Va. at 694, 769 S.E.2d at 483. By comparison, the Court in *Shearer v. United Carbon Co.*, 143 W. Va. 482, 103 S.E.2d 883 (1958), was

---

[7] There is no dispute in this case that the Assignment to U.S. Exploration was required to be recorded pursuant to West Virginia Code § 40-1-9.

asked to determine whether a royalty modification agreement between property owners and their original leaseholder, which agreement had not been recorded, was binding on a subsequent assignee of those leasehold rights. Ultimately, we declined to answer the question, holding that "the plaintiffs may maintain this suit in equity as third party beneficiaries of a contract for their benefit without regard to the recording statutes." *Id*. at 488, 103 S.E.2d at 887 (citing *Hartmann v. Windsor Hotel Co*., 132 W. Va. 307, 52 S.E.2d 48 (1949). Justice Given, in a short but forceful dissent, noted that the issue was not whether the document had been recorded, but rather the fact that defendant "had no notice thereof, or of any fact putting it on inquiry." *Id*. at 489, 103 S.E.2d at 888 (Given, J., dissenting).

Inasmuch as "the person who asserts that [actual] notice has been had must establish the facts and circumstances which clearly indicate notice," *Alexander*, 135 W. Va. at 408, 64 S.E.2d at 490, we examine the record to determine whether U.S. Exploration has presented evidence sufficient to raise a disputed issue of material fact on this point. In this regard, U.S. Exploration relies on two facts: first, the statement made by Mr. Slack to Mr. Eliopulos during the course of the Slack/Fitzpatrick divorce proceedings; and second, Mr. Eliopulos' knowledge of those proceedings. The entirety of the evidence on both points is contained in Mr. Slack's affidavit, submitted in opposition to plaintiff/respondent's motion for partial summary judgment:

13

7.    Ms. Fitzpatrick was accompanied at some divorce hearings in Vermont by Jim Eliopolos, who was acting as a sales agent for Griffin Producing Company.

8.    Mr. Eliopolos was aware of our divorce, my ownership interest in Magnum Oil Corporation and the contested nature of the company and its assets as marital property.

9.    It is my belief that shortly after filing for divorce in Vermont, the Vermont court entered an Order prohibiting the transfer of any marital or corporate assets.

10.    In December of 2012, Mr. Eliopulos attended a hearing in the Vermont divorce court.  At that time, I told him I would never allow him, or Griffin Producing Company, to acquire the Griffin Leasehold.

11.    Mr. Eliopulos was thus aware, in July 2013, that there was no consensus within Magnum to sell its interest in the Griffin Leasehold and that Kathleen Fitzpatrick was acting outside of her authority.

We agree with the circuit court that as a matter of law, Mr. Slack's statement to Mr. Eliopulos, that "I would never allow him, or Griffin Producing Company, to acquire the Griffin Leasehold," was insufficient to put Mr. Eliopulos on notice that Mr. Slack already had, or was about to, execute an assignment of Magnum's leasehold to U.S. Exploration.[8]  The petitioners' argument on this point is "an attempt to carry [the statement] beyond what it naturally and fairly imports." *Cassiday Fork Boom & Lumber Co. v. Terry*, 69 W. Va. 572, 584, 73 S.E. 278, 283 (1911); *see also Ihrig v. Ihrig*, 78 W. Va. 360, 365, 88 S.E. 1010, 1012 (1916) ("A mere suspicion of notice, though it be a strong suspicion,

_____

[8] The record does not disclose when in December, 2012, this divorce hearing was held.  The Assignment to U.S. Exploration was executed on December 28, 2012.

will not suffice, for a purchase with notice of the right of another carries an imputation of fraud, and, therefore, the proof of it must be clear.") (internal citations omitted). Similarly, petitioners' allegation that Mr. Eliopulos, Griffin's agent, was aware of the existence of the Slack/Fitzpatrick divorce proceedings, is insufficient to support a finding of notice. In this regard, "[a]ll of the cases bearing upon the subject of notice hold that a showing of notice is made where a person is charged with facts and circumstances which require him to make inquiry as to matters of which notice or lack of notice is required." *Alexander*, 135 W. Va. at 412, 64 S.E.2d at 492. In the instant case, we find nothing in the appendix record from which a reasonable inference may be drawn that Mr. Eliopulos had knowledge of anything other than the bare fact that the parties were divorcing; this, in and of itself, is not a fact or circumstance sufficient to require further inquiry under *Alexander*.[9]

---

[9] West Virginia Code § 40-1-9 provides, inter alia, that an unrecorded conveyance is "void, as to creditors, and subsequent purchasers for valuable consideration without notice." With respect to the issue of valuable consideration, petitioners claim that the consideration paid by Griffin was unreasonably low, citing Mr. Slack's "belief" that the value of the leases and royalties surrendered was $3,000,000.00. The only basis for this claim is a single conclusory sentence contained in Mr. Slack's affidavit in opposition to the motion for partial summary judgment. Petitioners presented no evidence to back up Mr. Slack's conclusory statement, no evidence as to his expertise in the valuation of leasehold and royalty interests, and no evidence as to any factors "that a reasonable buyer or seller would typically consider should be included in an analysis of fair market value." *W. Va. Dep't of Transp., Div. of Highways v. W. Pocahontas Properties, L.P.,* 236 W. Va. 50, 62, 777 S.E.2d 619, 631 (2015) (footnote omitted). In short, petitioners failed to present evidence sufficient to create a disputed issue of material fact not only on the issue of notice, see text *supra*, but also on the issue of whether Griffin was a purchaser for "valuable consideration."

**Was Griffin a Bona Fide Purchaser**

Notwithstanding our conclusion that Griffin did not have notice of the U.S. Exploration Assignment, Mr. Eliopulos' knowledge of the existence of the Slack/Fitzpatrick divorce proceedings does raise a more troubling question: whether Griffin was a bona fide purchaser of property that was being contested in those proceedings. In this regard, we have held that,

> When a party to a divorce case undertakes – before the final order of equitable distribution in the case is effective – to transfer real property to a third party having actual knowledge of the divorce proceedings, the transfer is effective only to the extent it does not conflict with the equitable distribution order unless the other party to the divorce joins in the transfer. To the extent the attempted transfer conflicts with the order of equitable distribution and there is evidence that the transfer was made to avoid application of the equitable distribution statutes or was otherwise a fraudulent conveyance, it is void.

Syl. Pt. 7, *Whiteside v. Whiteside*, 222 W. Va. 177, 663 S.E.2d 631 (2008). In *Whiteside*, husband and wife were involved in both a bankruptcy proceeding and a divorce proceeding. In the bankruptcy proceeding, the trustee sought to sell certain marital property to Equity Holdings, LLC; however, after wife filed an upset bid, the bankruptcy judge denied the trustee's motion to sell the property and advised that it be abandoned as an asset of the bankruptcy estate. Five days after the property was abandoned by the trustee, husband transferred his share of it to Equity Holdings; and in a subsequent hearing in divorce court, husband lied to the judge, representing that he still owned his share of the property and would deed it to wife to satisfy her claims against him. On these egregious facts, this Court

16

affirmed the lower court's findings that (1) husband had conveyed his share of the property for the specific purpose of defeating equitable distribution, and (2) Equity Holdings, which had actual knowledge that division of this specific property was an issue under litigation in family court, was not a bona fide purchaser.

We reaffirm the law established in syllabus point seven of *Whiteside*, but conclude that petitioners have failed to establish any facts necessary to bring the instant case within its ambit. First, although there is evidence in the record that the Slack/Fitzgerald divorce proceeding was ongoing in Vermont in December, 2012, there is no evidence to establish that it was still ongoing on July 12, 2013, the date on which the Modification and Surrender were executed. Second, although Mr. Slack states in his affidavit that "[i]t is my belief that shortly after filing for divorce in Vermont, the Vermont court entered an Order prohibiting the transfer of any marital or corporate assets," there is no documentation in the record to establish when, or indeed if, such an order was actually entered. Third, although the alleged order prohibited the transfer of any marital assets, there is no documentation in the record to establish whether Magnum was actually a marital asset,[10] an issue that was presumably settled at some point by some divorce court.[11] Fourth,

---

[10] Respondent argued in the court below, and claims in its brief, that Ms. Fitzpatrick owned Magnum prior to the parties' marriage.

[11] As noted *supra*, the divorce apparently began in Vermont and ended in North Carolina.

17

and most critical, we believe that the doctrine of unclean hands prohibits Mr. Slack, and by extension U.S. Exploration, a company he owns, from raising this issue.

> Whenever and if it is made to appear to the court that by reason of fraudulent or other unconscionable conduct, the plaintiff has lost his right to invoke a court of equity, the court will, on the motion of a party, or its own motion, wash its hands of the whole. Indeed, this Court may, *sua sponte,* invoke the doctrine of unclean hands to invoke an equitable and just result.

*Foster v. Foster*, 221 W. Va. 426, 431, 655 S.E.2d 172, 177 (2007) (internal citations omitted); *see also Town of Cowen v. Cobb*, No. 15-0438, 2016 WL 2969917, at *4 (W. Va. May 20, 2016) (memorandum decision) ("*both* parties acknowledged their role in the non-payment of the taxes, causing the circuit court to find that *both* parties had "unclean hands."); *In re Livesay*, 178 W. Va. 739, 741, 364 S.E.2d 267, 269 (1987) ("We note that the Waynes filed a Motion to Dismiss Appellant's appeal because of her retention of Tom during the 1986 Christmas visitation. While we denied the motion and do not consider those facts in this appeal, the appellant's unclean hands may be considered by the trial court during final disposition of this matter."). In the instant case, if there actually was an order in existence prohibiting the parties from disposing of any property while the divorce was ongoing, then Mr. Slack himself violated it by executing the Assignment to U.S. Exploration, and cannot now complain that Ms. Fitzpatrick subsequently violated it by executing the Modification and Surrender to Griffin. *See* Syl. Pt. 1, *White v. Graham*, 112 W. Va. 451, 164 S.E. 664 (1932). ("In equity, the bar of the unclean hands rule is raised only because of conduct connected with the particular transaction from which relief is sought. *Bias v. Bias*, 109 W. Va. 621, 155 S.E. 898 [1930].").

18

**Were U.S. Exploration and Slack "Ambushed"**

Petitioners' final argument is that they were "ambushed" and "surprised" by representations made by Griffin's counsel at the hearing on the motion for partial summary judgment, and were not given an opportunity to secure and submit proof in support of their response in opposition to the motion. Our review of the record demonstrates that this claim is overblown, at best. This civil action was filed on September 10, 2014, and the allegations in the complaint presented a straightforward, single issue case: whose documents had priority. The parties conducted discovery and thereafter, on or about April 5, 2017, more than two and one-half years later, Griffin filed its motion for partial summary judgment. Petitioners filed their response on May 17, 2017, the date earlier set for hearing.

On these facts, we reject any argument that petitioners did not have enough time to do whatever discovery they deemed necessary and/or to secure any documentation they deemed necessary. Additionally, we reject any argument that petitioners were ambushed or surprised at the hearing, as they should reasonably have known that the time to prove Griffin was not a "subsequent purchaser[] for valuable consideration without notice" was now, not at some later date. We note that petitioners did not file a motion for relief from the court's order based on mistake, inadvertence, surprise, excusable neglect, or unavoidable cause, West Virginia Rule of Civil Procedure 60(b)(1), or otherwise take any action to supplement the evidentiary basis for their defenses.

## IV. CONCLUSION

The circuit court correctly concluded that the Assignment and Surrender from Magnum Oil Corporation to Griffin Producing Company, executed on July 12, 2013, and recorded on August 20, 2013, "were valid documents that transferred title in the subject overriding royalty interests and surrendered the subject leasehold estates as of the time of their recording." Accordingly, the September 17, 2018, order of the Circuit Court of Ritchie County, West Virginia, affirming its previous order of September 22, 2017, and entering final judgment for defendant/respondent, Griffin Producing Company, is affirmed.

Affirmed.